UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELICIA MARIE DYER,

                Plaintiff,                      Civil Action No. 10-cv-10130

        v.                            District Judge Mark A. Goldsmith
                                        Magistrate Judge Laurie J. Michelson

SHADEHAEDA HARDWICK, et al.,

                Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS HARDWICK,
WARD, LEE, CAMPBELL, DEANGELO, AND JONES' MOTION TO DISMISS [26]**

Plaintiff Felicia Marie Dyer ("Plaintiff" or "Dyer"), a Michigan Department of Corrections ("MDOC") prisoner proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that former or current MDOC employees Shadehaeda Hardwick, Annae Sanders, Ester Ward, Eva Lee, Sherman Campbell, Clarice Stovall, Robin Cole, Jodi DeAngelo, Leslie Hunter, Karen Masten, and Janea Jones violated a number of her constitutional rights.[1]  Presently before the Court is Defendants Hardwick, Ward, Lee, Campbell, DeAngelo, and Jones' Motion to Dismiss.  (Dkt. 26, Defs.' Mot. Dismiss; Dkts. 5, 32, Referral Orders.)  Plaintiff has filed her Response (Dkt. 28, Pl.'s Resp. to Defs.' Mot. Dismiss), and for the following reasons, this Court RECOMMENDS that Defendants' Motion be GRANTED IN PART and DENIED IN PART.

---

[1]In her Amended Complaint, Plaintiff lists additional Defendants: Tonya Watson, Sarah Stringer-Hill, Kimberly Masten, and Barbara Bush.  (Dkt. 24.)  By separate order this Court will direct service upon these Defendants.

# I. BACKGROUND

## A. Alleged Facts[2]

When the events underlying this suit took place, Plaintiff was an inmate at the now-closed Robert Scott Correctional Facility (SCF) for women. (Dkt. 28, Pl.'s Resp. to Defs.' Mot. Dismiss at 1.) Each of the Defendants named in this suit worked at SCF during the time in question: October 2007 through August 2008. (*Id.*) For the most part, the claims in this suit arise from two alleged events: (1) Plaintiff being falsely charged with an inmate assault and Defendants wrongly penalizing her for that assault, and (2) certain Defendants confiscating Plaintiff's legal materials resulting in her untimely federal habeas appeal. But, as will become apparent below, Plaintiff has also presented a myriad of other matters arising from her confinement at SCF.

On October 10, 2007, Defendant Hardwick, an Assistant Resident Unit Supervisor ("ARUS") at SCF, received a written request for Special Problem Offenders Notice ("SPON") from Plaintiff. (Dkt. 24, Am. Compl. ¶ 1; *but see* Am. Compl. Ex. A at ECF 17 (SPON request to Hardwick dated October 30, 2007).) A SPON documents "dangerous or potentially dangerous offenders, and known or potential conflict situations between offenders" and may be issued upon appropriate investigation. Policy Directive 03.03.110 (eff. 05/20/2002) *available at* http://www.michigan.gov/corrections/

___

[2]For purposes of Defendants' Motion to Dismiss, the Court accepts as true all of Plaintiff's factual allegations and presents them as such. Further, although a Fed. R. Civ. P. 12(b)(6) motion challenges the sufficiency of the allegations in a complaint, a court may consider materials attached to the complaint and referenced by those allegations. *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) ("Even though Rule 12(b)(6) scrutiny is limited to the pleadings, the pleadings in this case include numerous exhibits attached to the complaint, as well as exhibits attached to defendants' motion to dismiss that are referred to in the complaint."); *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (deciding, in the *pro se* prisoner context, that "the court will consider documents filed after the complaint 'as part of the pleadings,'" and examining statements in prisoner's response to defendants' motion to dismiss).

0,1607,7-119-1441_44369---,00.html. Plaintiff alleged discontent between herself, inmate Toreena Watkins,[3] and inmate Chanika Moore (Plaintiff's co-defendant in her underlying criminal case). (Am. Compl. ¶¶ 1, 9; Pl.'s Resp. at 1.) Specifically, Plaintiff informed Hardwick, "I have been threatened with a lock, I have had coffee thrown on me, I have also been bumped." (Pl.'s Resp. at 1; *see also* Am. Compl. ¶ 1.) Plaintiff also noted that Watkins had an existing SPON for a prior assault at another facility, the Women's Huron Valley Correctional Facility (WHV), and could not go back there because of that SPON. (Am. Compl. Ex. A at ECF 17.) It appears for that reason Plaintiff requested a SPON against Moore. (*Id.*) Plaintiff also believed that Watkins and Moore were planning to set her up.

In response to Plaintiff's SPON request, Hardwick and non-party Acting ARUS Joyce met with Plaintiff and Moore in late October 2007. (Pl.'s Resp. at 1.) At this meeting, Hardwick told Plaintiff that she would not transfer Moore (allegedly Hardwick's friend) to another facility because the move would place Moore far from her children. (Pl.'s Resp. at 1.) Plaintiff says she witnessed Hardwick and Moore "being overfamiliar" on November 14, 2007. (Am. Compl. ¶ 8.)

On November 8, 2007, Plaintiff met with Acting Deputy Warden Defendant Sanders. According to a grievance Plaintiff later filed against Sanders, Sanders tried to persuade Plaintiff to go into protective segregation. (Am. Compl. Ex. B at ECF 24.) In mid-November 2007, Sanders met with Plaintiff again where Sanders threatened Plaintiff with security reclassification if Plaintiff did not agree to state in writing that she no longer wanted a SPON. (Am. Compl. Ex. B at ECF 24; *see also* Am. Compl. ¶ 2.) Apparently, Plaintiff's mother contacted MDOC in Lansing, and SCF issued a SPON on November 19, 2007. (Pl.'s Resp. at 2.) Inmate Moore was transferred to WHV

---

[3]Toreena Watkins is one of the aliases for Marie Chamaine Ledbetter (P 333941).

on November 21, 2007.  (Am. Compl. ¶ 9; Am. Compl. Ex. B at ECF 20, 23.)

      Plaintiff also alleges that certain Defendants wrongly subjected her to a number of other hardships during November and early December 2007.  First, she was subjected to "sixteen cell searches and over twenty days of sanction issued without evidence of any wrong doing" in November 2007.  (Am. Compl. ¶ 4.)  Second, in mid-November 2007, correctional officers found a walkman in Plaintiff's cell.  (*See* Am. Compl. Ex. A at ECF 48.)  Defendant Jones was the hearing officer on the resulting minor misconduct charge, and Plaintiff claims that in finding her guilty, Jones erroneously relied upon evidence of "headphones" when the documented contraband was a "walkman."  (Am. Compl. ¶ 5; *see also* Am. Compl. Ex. A at ECF 48.)  Defendant Sanders denied Plaintiff's minor misconduct appeal because Plaintiff failed to attach a copy of the minor misconduct report.  (*See* Am. Compl. Ex. A at ECF 48; Am. Compl. ¶ 6.)  Third, Plaintiff kited Hardwick in November 2007 about moving to a non-smoking unit within SCF.  (*See* Am. Compl. ¶ 7.)  Plaintiff's November 22, 2007 grievance against Hardwick states that Hardwick yelled, did not grant the move, and wanted Plaintiff to remain in her unit so that she could "routinely harass" Plaintiff.  (Am. Compl. Ex. B at ECF 18.)  Fourth, on November 30, 2007, Defendant Watson disposed of Plaintiff's property without a proper hearing (and Defendant Masten responded to the resulting grievance).  (Am. Compl. ¶ 11; Am. Compl. Ex. A at ECF 47.)  Fifth, on or around December 1, 2007, SCF reassigned Hardwick to the segregation unit, but, a few days later, Hardwick left her new position to reject Plaintiff's "biweekly shop" for personal hygiene items.  (Am. Compl. ¶¶ 14, 15.)  Sixth, on December 10, 2007, Defendant Masten "contradicted herself" by, on the one hand, stating that there was "no proof that another prisoner had Plaintiff's property," but, on the other hand, filing a misconduct charge against Plaintiff because Plaintiff loaned certain property to another prisoner.

(Am. Compl. ¶ 12.)

On November 26, 2007, inmate Watkins received a cut on her neck as a result of an assault by another inmate.  (Am. Compl. ¶¶ 10, 17, Ex. A at ECF 29.)  Watkins was placed into protective custody, and, initially at least, would not divulge who attacked her.  (Am. Compl. ¶ 17, Ex. A at ECF 29.)  SCF released Watkins from segregation on December 13, 2007, however, when she named Plaintiff as her assailant.  (Am. Compl. ¶ 17.)  Although not pled in the Amended Complaint, elsewhere Plaintiff noted that a week after Defendant Hardwick had been reassigned to segregation, Watkins, apparently in segregation for protective reasons, came forward with an "elaborate story" regarding the assault.  (Am.  Compl. Ex. A at ECF 34.)  That same day, December 13, 2007, SCF placed Plaintiff in segregation.  (Am. Compl. ¶¶ 14, 18.)

On December 20, 2007, Barbara Bush held a major misconduct hearing, and found Plaintiff guilty of assaulting and battering inmate Watkins.  (Am. Compl. ¶ 20.)  A review of the Major Misconduct Hearing Report reveals that Plaintiff told Bush that Watkins (falsely) accused Plaintiff of the assault so Watkins would be transferred to WHV (where Moore had been transferred a week before the assault).  (Am. Compl. Ex. A at ECF 18.)  Plaintiff asserts that Bush violated Plaintiff's due process rights by "denying [P]laintiff camera footage and staff witness who were stationed at the location of the alleged assault."  (Am. Compl. ¶ 19.)  Bush sentenced Plaintiff to 30 days detention beginning December 20, 2007 and a loss of three credit days.[4]  (Am. Compl. Ex. A at ECF 18.)

---

[4]Plaintiff's Complaint reflects that she appealed the major misconduct charge but the state court affirmed MDOC's decision.  (Am. Compl. Ex. A at 50.)  Plaintiff denies the wrongdoing, however, and notes that on May 28, 2008, Plaintiff passed a polygraph performed by the Michigan State Police.  (Am. Compl. ¶ 45.)

5

On December 30, 2007, while in detention, Hardwick housed Plaintiff with "mentally unstable inmates," inmates threw feces and urine around her unit, and Plaintiff's cell "flooded with contaminated toilet water." (Am. Compl. ¶ 22.)

On December 20, 2007 and January 6, 2008, Plaintiff wrote to SCF Inspector Defendant Campbell. (Am. Compl. ¶ 21.) Plaintiff sought to notify Campbell that she had filed grievances against Hardwick and Sanders, and the two were members of the Security Classification Committee ("SCC") who would determine Plaintiff's security status. (Am. Compl. ¶¶ 21, 25, 29, Ex. A at ECF 40, 41.) Cobbling together various allegations in Plaintiff's Complaint, it appears that the following Defendants were members of the SCC: Hardwick, Sanders, Jones (allegedly Hardwick's friend), Cole, DeAngelo, and Lee. (Am. Compl. ¶¶ 25, 29, 31, 33.)

On January 10, 2008, SCC members Hardwick, Sanders, and Cole reclassified Plaintiff to administrative segregation to begin upon completion of her 30-day detention: January 16, 2008. (Am. Compl. ¶ 25.) Plaintiff filed a grievance on January 25, 2008 asserting that, under MDOC policy, the SCC was required to review her security classification on a weekly basis and the SCC failed to review her status on January 17, 2008 (a week from the January 10, 2008 decision). (Am. Compl. Ex B. at ECF 28.) The record reflects, however, that the SCC began reviewing Plaintiff's classification on a weekly basis at least by January 24, 2008, and on February 14, 2008, the SCC recommended that Plaintiff return to the general population.[5]

---

[5]Attachments to Plaintiff's Amended Complaint reflect four SCC reviews. On January 24, 2008, Hardwick conducted Plaintiff's SCC interview, and Defendants Cole, Sanders, and Stringer-Hill recommended that Plaintiff continue in administrative segregation. (Am. Compl. Ex A. at ECF 35.) The next week, on January 31, 2008, Hardwick again interviewed Plaintiff, with Defendants DeAngelo and Lee, and non-party Beasley recommending continued segregation. (Am. Compl. Ex A. at ECF 36.) On February 7, 2008, Hardwick interviewed Plaintiff with Defendants DeAngelo and Lee, and non-party Parker making the decision to continue segregation. (Am. Compl. Ex A. at

It appears that sometime in February 2008, Plaintiff's family sent Defendant Stovall, the SCF

Warden, a "packet of papers" complaining about SCF and asserting that Defendants Hardwick and

Hunter had been harassing Plaintiff. (Am. Compl. ¶ 35, Ex. B at ECF 38.) On February 23, 2008,

Hardwick and Hunter went to Durant Unit (where Plaintiff resided but Hardwick no longer worked)

and told Plaintiff about the packet of papers. (Am. Compl. ¶ 35.) Hardwick and Hunter also "used

intimidation" when asking Plaintiff to "hand over a copy of [her] appeal from a misconduct" which

Plaintiff "could not do." (Am. Compl. ¶ 35, Ex. B at ECF 38.)

On February 28, 2008, Defendant Ward issued a contraband notice of intent.  Plaintiff

explains that she previously received a minor misconduct report for the same contraband, and, under

MDOC Policy Directive 04.07.112, she should have received only one of the two.  (Am. Compl.

¶ 36, Ex. A at ECF 38, Ex. B at ECF 13.)

On April 15, 2008, Defendants Lee and Ward confiscated Plaintiff's legal work.  (Am.

Compl. ¶ 39.)  A grievance Plaintiff completed on April 25, 2008, states that Lee took Plaintiff's

legal work in violation of MDOC Policy Directive 04.07.112 which, among other things, requires

a hearing within seven days of confiscating legal materials. (Am. Compl. Ex. B at ECF 10; *see also*

Am. Compl. ¶ 40.) Although the grievance response is unclear, it appears that a hearing was set for

April 18, 2008, but due to Lee's absence, the legal materials were turned over to a hearing officer

with a hearing set for May 21, 2008.  (*Id.*)  The grievance response further notes, however, that

"Prisoner [Dyer] is able to access her legal documents and obtain whatever legal documents she

_____

ECF 37.)  Finally, on February 14, 2008, Defendants DeAngelo, Hunter, and, notably, Hardwick
(with Hardwick performing the SCC interview) reclassified Plaintiff to the general population. (Am.
Compl. Ex A. at ECF 49; *see also id.* Am. Compl. ¶ 34.)  According to Plaintiff, however, she had
to wait until Hardwick's off-day to actually return to the general population, because Hardwick said
that there was no bed space.  (Am. Compl. ¶ 34.)

need[s] to work on her case pending hearing date.  Prisoner [Dyer's] property is pack[ed] and stored

in a secure location pending the hearing date."  (*Id.*)  Ward reviewed the grievance response.  (*Id.*;

Am. Compl. ¶ 39.)

Plaintiff asserts that on May 8, 2008, she informed SCF "administration" that she had a

scheduled attorney visit.  (Am. Compl. ¶ 41.)  However, SCF refused to give Plaintiff access to the

confiscated legal materials for this attorney visit.  (*See* Am. Compl. ¶ 43.)  Plaintiff explains,

> Due to the wasted trip by [P]laintiff's attorney and wasted money by
> Plaintiff's family this was [P]laintiff['s] last visit with an attorney.
> Plaintiff was unable to make arrangements for attorney to take on
> criminal case.  Plaintiff filed [f]ederal [h]abeas [p]etition pro per and
> did not have money to throw away.  Instead of legal mail going to the
> attorney's office it came straight to [SCF].

(Pl.'s Resp. at 4.)  On August 15, 2008, a court of this district issued an order denying Plaintiff's

petition for habeas.  *Dyer v. Stovall*, No. 06-cv-14898 (E.D. Mich. Aug. 15, 2008) (Dkt. 28).

Plaintiff asserts that SCF never provided this decision to her.  (Am. Compl. ¶ 47.)  A year later,

Plaintiff attempted to appeal, but the Sixth Circuit dismissed the appeal as untimely.

**B. Procedural History**

On May 26, 2010, Defendants Hardwick, Ward, Campbell, DeAngelo, and Jones, moved to

dismiss Plaintiff's original Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 41(b), and, in the

alternative, for a more definitive statement pursuant to Fed. R. Civ. P. 12(e) ("Motion for More

Definite Statement").  (Dkt. 19, Mot. for More Def. Stmt.)  Shortly thereafter, Lee joined that

motion.  (Dkt. 22.)  The Motion for More Definite Statement correctly noted that the original

Complaint consisted of close to 250 pages of grievances, letters, and other papers, and asserted that

Plaintiff "sue[d] eleven current and former prison officials and employees . . . but set[] forth no

individualized claims against any of the defendants."  (Mot. for More Def. Stmt. at 3.)

8

Recognizing that her initial complaint was deficient, on July 20, 2010, Plaintiff filed her first motion to amend which lists, in 47 numbered paragraphs, factual allegations and constitutional claims against particular Defendants ("First Motion to Amend"). (Dkt. 24.) (However, similar to the original Complaint, Plaintiff included over 100 pages of grievances, grievance responses, and other papers.) On January 18, 2011, Magistrate Judge Whalen granted Plaintiff's First Motion to Amend. (Dkt. 30.) On May 25, 2011, this Court issued an Order informing the parties that it would construe the First Motion to Amend as an amended complaint ("Amended Complaint") and ordered service of the Amended Complaint on Defendants Annae Sanders, Warden Clarice Stovall, Robin Cole, Leslie Hunter, and Karen Masten. (Dkt. 33.)

On September 15, 2010, Defendants Hardwick, Ward, Lee, Campbell, DeAngelo, and Jones moved to dismiss the Amended Complaint ("Motion to Dismiss"). (Dkt. 26.) It is this Motion to Dismiss that is presently pending before the Court and addressed by this Report and Recommendation. More than ten months later (during the drafting of this Report and Recommendation) Plaintiff filed another motion to amend. (Dkt. 37.) This motion contains the same 47 paragraphs as the Amended Complaint, but further details the allegations against Defendants Stovall, Cole, and Sanders. (*See id.*) Defendant Hardwick is mentioned only briefly, and no mention is made of the other presently moving Defendants (Ward, Lee, Campbell, DeAngelo, and Jones). Accordingly, for purposes of resolving the pending Motion to Dismiss, Plaintiff's Amended Complaint (Dkt. 24) governs.

9

## II. ANALYSIS

### A.  Legal Standards

Under Rule 12(b)(6), a case warrants dismissal if it fails "to state a claim upon which relief can be granted."  When deciding a motion under Rule12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its face."  *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard does not require a plaintiff to plead facts showing that liability is probable, "but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, a plaintiff has failed to "nudge[]" his claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 557.

The Court is mindful, however, that Plaintiff is proceeding *pro se* and "[a] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so,

> the duty "does not require [a court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its

10

> legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

*Armstead v. Bush*, No. Civ.A. 305CV274H, 2005 WL 1503556, at *2 (W.D. Ky. Jun. 23, 2005);

*accord Bonner v. Rechtzigel*, No. 10-15069, 2011 WL 1336678, at *1 (E.D. Mich. Apr. 7, 2011).

### B. Plaintiff's Eighth Amendment Claims Against Hardwick

Plaintiff asserts that Defendant Hardwick violated her Eighth Amendment rights by (1) exposing Plaintiff to dangerous inmates, Watkins and Moore, after Plaintiff filed a SPON request informing Hardwick that Watkins had poured hot coffee on Plaintiff (*see* Am. Compl. ¶ 1; Pl.'s Resp. at 8); (2) failing to transfer Plaintiff to a non-smoking unit despite several requests (Am. Compl. ¶ 7); (3) preventing Plaintiff from conducting her biweekly shop and ordering personal hygiene items (*id.* ¶ 15); (4) allowing Plaintiff's cell to be "flooded with contaminated toilet water, and having feces and urine thrown around the Unit" (*id.* ¶ 22); (5) failing to evaluate Plaintiff's security classification in a timely manner (*id.* ¶ 29); and, relatedly, (6) keeping Plaintiff in segregation for an extended period (*id.* ¶¶ 31, 33, 34) and (7) placing Plaintiff in a "cell[] designated for special precaution inmates" (*id.* ¶ 18). In addition, and unaddressed by Defendants, Plaintiff asserts that in November 2007 she was subjected to sixteen cell searches without evidence of wrong doing. (Am. Compl. ¶ 4.)

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. Eighth Amendment claims have an "objective component" (i.e., "was the deprivation sufficiently serious?") and a "subjective component" (i.e., "did the officials act with a sufficiently culpable state of mind?"). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires that "the deprivation alleged must be . . . 'sufficiently serious,'" which means

that "the inmate must show that [s]he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Stated differently, a violation of Eighth Amendment rights will be found only when a prisoner is deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

As a threshold matter, given the many unpleasantries Plaintiff alleges, the Court notes that while "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone," this holds only when the conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The Supreme Court has explained that while "mutually enforcing" conditions may establish a cruel or unusual deprivation, this "is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

### 1. Plaintiff's Failure-to-Protect Claim Fails as a Matter of Law

Plaintiff is correct that under the Eighth Amendment, "[p]rison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "Nonetheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Id.* The Sixth Circuit has held that an Eighth Amendment claim for monetary damages requires an inmate to plead and prove that she suffered some non-*de minimis* physical injury. *Yaklich*, 148 F.3d at 600-01 (finding that complaint failed to

12

state an Eighth Amendment claim where "plaintiff primarily request[ed] monetary relief . . . in the form of compensatory and punitive damages" but complaint contained no allegations that inmates who threatened the plaintiff "actually injured him physically"); *Washington v. Johnson,* No. 04-10352, 2009 WL 73676, at *8 (E.D. Mich. Jan. 9, 2009) ("[The] Sergeant's decision to place Plaintiff's enemy with her in the cell did not result in any assault, nor was Plaintiff harmed in any way. . . . [W]here an actual assault is not alleged, dismissal of an action for money damages is warranted."); *Bristow v. Eleby*, No. 2:08-cv-0250, 2008 WL 3414132, at *3 (S.D. Ohio Aug. 8, 2008) *report adopted by* 2008 WL 4346652 (S.D. Ohio Sept. 18, 2008) (holding, where plaintiff-inmate had "not alleged that he suffered an actual assault by [another] inmate . . . or any other member of the Aryan Brotherhood as a result of defendant [officer's] failure to protect him," that the complaint failed to state a claim for monetary damages against the defendant-officer); *cf. White v. Trayser*, No. 10-cv-11397, 2011 WL 1135552, at *5 (E.D. Mich. Mar. 25, 2011) (holding, where plaintiff alleged that defendant "endangered his life by giving him a cup of coffee and, in the presence of other inmates, thanking him for 'the information about who is bringing in the Tobacco,'" that "to state a claim for deliberate indifference under the Eighth Amendment in the Sixth Circuit, there must be some resulting harm stemming from being labeled a snitch.").

Here, Plaintiff's Amended Complaint is completely devoid of any allegation that inmate Watkins, Moore, or any other SCF inmate caused Plaintiff to suffer physical, emotional, or mental injury after Hardwick received Plaintiff's SPON request. And Plaintiff makes no allegation that Hardwick actually knew of the conflict between Watkins, Moore, and Plaintiff prior to that request. (*See* Pl.'s Resp. at 8 ("Hardwick knew Plaintiff had been assaulted at least two times by inmate

13

Watkins *from the correspondence*" (emphasis added)).)[6]

───────────────

[6]This reasoning also applies to Plaintiff's claims for nominal and punitive damages for Hardwick's alleged failure-to-protect. (*See* Am. Compl. at ECF 15.) The plaintiff-inmate in *Yaklich* sought both punitive and compensatory damages and the Sixth Circuit did not delineate the two in finding that there was no Eighth Amendment claim for monetary damages absent allegations of some non-*de minimis* physical injury. *See* 148 F.3d at 601. Similarly, the court in *Bristow*, which relied in part on *Yaklich*, drew no distinction between punitive and compensatory damages. 2008 WL 3414132 at *3 (stating that plaintiff "seeks compensatory damages of $5,000.00 for emotional and mental distress and punitive damages of $25,000.00").

This Court notes, however, that the Sixth Circuit in *Yaklich* relied, at least in part, on the reasoning from the Seventh Circuit's decision in *Babcock v. White*, 102 F.3d 262 (7th Cir.1996):

> "However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment."

*Yaklich*, 148 F.3d at 601 (quoting *Babcock*, 102 F.3d at 272). Since *Babock* and *Yaklich* have been decided, however, courts have examined 42 U.S.C. § 1997e(e) in the context of dismissing Eighth Amendment claims for damages where the inmate has not alleged any physical injury as a result of an alleged failure-to-protect. *See Bristow*, 2008 WL 3414132 at *3 (noting that *Yaklich* was in a "similar vein" to § 1997e(e)); *Gibbs v. Ball*, No. 07-CV-15462, 2009 WL 331604, at *4 (E.D. Mich.) *report adopted without objections by* 2009 WL 331604 (E.D. Mich. Feb. 11, 2009) (citing both § 1997e(e) and *Yaklich* and finding that Eighth Amendment claim based on defendant calling plaintiff a "rat" within earshot of other prisoners was subject to dismissal where, *inter alia*, the plaintiff failed to allege physical injury). That section, the interpretation of which has caused circuit and intra-district splits over what type of relief it precludes (and what type of constitutional claims it applies to), provides:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e); *see Jackson v. Herrington*, 393 F. App'x 348 (6th Cir. 2010) (holding that prisoner did not have Eighth Amendment claim for strip search that did not cause physical injury but declining to "address [plaintiff's] contention concerning other circuits' determinations that § 1997e(e) does not bar recovery of punitive or nominal damages."); *but see Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (revisiting *Babcock* and noting that defendant's "contention [that physical injury is required under § 1997e(e)] if taken to its logical extreme would give prison officials free reign to maliciously and sadistically inflict psychological torture on prisoners, so long as they take care not to inflict any physical injury in the process.").

To this Court's knowledge, the Sixth Circuit has not revisited *Yaklich*. And despite some tension with an interpretation of § 1997e(e) that would allow for nominal damages in the Eighth Amendment context, *Yaklich* did not rely on that statutory provision. And in the limited Eighth Amendment failure-to-protect context, it appears that claims for monetary relief are dismissed in their entirety when the Plaintiff cannot plead or prove non-*de minimis* physical injury. *Yaklich*, 148

Moreover, to the extent that Plaintiff seeks injunctive relief against Hardwick, Plaintiff has not alleged that there have been any threats from inmates since her SPON request in 2007 or that she is presently experiencing any inmate threats at her present facility, WHV.  In fact, although inmate Moore resides at WHV, Watkins is now out on parole.[7]  Further, while Plaintiff asserts that she is still "harassed by Defendants named in this complaint who are employed at" WHV (Am. Compl. at ECF 12), she has not alleged that Hardwick is employed at WHV, and the Court is not to speculate.  *See Iqbal*, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").  In fact, Defendants assert that among the named Defendants, only Jones presently works at WHV.

> 2.  *Plaintiff Has Not Adequately Pled That Hardwick's Failure to Transfer Her to a Non-Smoking Unit Violated the Eighth Amendment*

In the context of an inmate's Eighth Amendment "secondhand smoke" claim, a "plaintiff must establish that [s]he has a serious medical need for a smoke-free environment, or that, regardless of health, the level of environmental tobacco smoke in the prison creates an unreasonable risk of serious damage to [her] future health."  *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (internal citations omitted); *see also Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) ("To satisfy

---

F.3d at 600-01 ("Even if he had claimed a non-physical injury such as fear of assault at the hands of the prison gang, however, monetary damages for such alleged harm would not have been appropriate in *this* Eighth Amendment context." (emphasis in original)); *see also Bristow*, 2008 WL 3414132, at *3; *White*, 2011 WL 1135552, at *5.

[7]*See* Michigan Department of Corrections, Offender Tracking Information System, http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=333941 (indicating that Marie Chamaine Ledbetter (Toreena Watkins) is a parolee); http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=471608 (indicating that Chanika Moore is an inmate at WHV).

the objective component [of a secondhand smoke claim], a prisoner must show that his medical needs are 'sufficiently serious.'"). The Amended Complaint does not allege that Plaintiff had any serious medical need for a smoke-free environment, nor does it allege that there were high levels of smoke at SCF creating an unreasonable health risk. In a grievance attached to Plaintiff's Amended Complaint, Plaintiff stated that she had a "non-smoking contract since 2005." (Am. Compl. Ex. B at ECF 18.) But the Court is still left to speculate that she executed this non-smoking contract because she had a "serious medical need" to be free from smoke. Based on the allegation of a contract alone, the Court can reasonably infer that a prisoner's agreement not to smoke may be a requirement for residing in a non-smoking unit, but cannot readily assume that all (or even most) inmates have such a contract because of serious medical need. *Iqbal*, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 556)). Accordingly, Plaintiff's assertion that Hardwick failed to transfer her to non-smoking unit fails to adequately state an Eighth Amendment violation.

### 3. Hardwick's Denial of Plaintiff's Biweekly Shop Did Not Violate the Eighth Amendment

Plaintiff asserts that Hardwick kept her from conducting her biweekly shop and ordering personal hygiene items. (Am. Compl. ¶ 15; *see also* Am. Compl. Ex. B at ECF 35.) Plaintiff does not allege, however, (1) which personal-care items she was deprived of, (2) any particular need for particular items, (3) how long she was deprived of them, or (4) that she suffered any injury as a result of the alleged deprivation. In fact, the Amended Complaint indicates that Hardwick only deprived Plaintiff of a single biweekly shop on December 6, 2007. (Am. Compl. ¶ 15.) Absent additional allegations, the Court cannot conclude that Plaintiff has stated an Eighth Amendment

16

claim upon which relief may be granted. *See Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010) ("Courts have not found the objective component satisfied where the deprivation of hygiene items was temporary."); *Matthews v. Murphy*, No. 90-35458, 1992 WL 33902 (9th Cir. Feb. 25, 1992) (noting that while "it has been held that 'the eighth amendment forbids deprivation of the basic elements of hygiene,'" the deprivation of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of an Eighth Amendment violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (holding complaint failed to plead an Eighth Amendment violation where inmate asserted "lack of deodorant, toothbrushes, toothpaste, postage, typing and carbon paper, and legal envelopes for 35 days"); *Fernandez v. Armstrong*, No. 3:02CV2252CFD, 2005 WL 733664, at *5-6 (D. Conn. Mar. 30, 2005) (holding that denying inmate of toothpaste, a toothbrush, shampoo, and soap for sixteen days did not violate the Eighth Amendment where plaintiff did not allege any physical effects or injuries).

### 4. *Plaintiff Has Not Adequately Pled That Her Exposure to Waste Violated The Eighth Amendment*

Plaintiff next asserts that on December 30, 2007, she "was subjected to her cell being flooded with contaminated toilet water, and having feces and urine thrown about the Unit. Defendant Hardwick housed Plaintiff with mentally unstable inmates, subjecting her to atypical living conditions in violation of the [Eighth] Amendment." (Am. Compl. ¶ 22.) Turning first to Plaintiff's assertion that her cell was flooded with toilet water that contained the urine and feces of another inmate (and that she lacked supplies to clean her cell) (Pl.'s Resp. at 9), this Court again finds that Plaintiff's allegations are insufficient to state an Eighth Amendment violation. Resolution of this issue—similar to the deprivation of hygiene products—turns on the length of the allegedly cruel

17

condition. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (noting that "the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."); *McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) ("'[T]he length of time a prisoner must endure an unsanitary cell is [simply] one factor in the constitutional calculus'; equally important is 'the degree of filth endured.'" (quoting *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994)).  When a prisoner's cell contains waste for more than a few days, courts have found a cognizable Eighth Amendment claim.  *See Williams v. Adams*, 935 F.2d 960, 961-62 (8th Cir. 1991) (reversing grant of summary judgment for defendants where plaintiff-inmate was placed in "the hole" for 13 days and alleged, *inter alia*, that the toilet water "continually [ran] over [and] leak[ed] onto the cell floor and the floor stay[ed] filthy with its wast[e]"); *McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (vacating district court's Rule 12(b)(6) dismissal where plaintiff alleged he was forced to live in "feces-covered cell" for three days); *Smith v. United States*, No. 9:09-CV-729, 2011 WL 777969 at *2, 11 (N.D.N.Y. Feb. 3, 2011) *report adopted by*, 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011) (finding objective prong of Eighth Amendment claim met where inmate alleged that officers refused to flush the toilet for two weeks "causing the toilet to overflow and covering the floor with urine and feces" and inmate alleged that "he was forced to sleep on the floor near the sewage and became ill due to the odor").  On the other hand, courts have found in-cell exposure to waste for shorter periods does not rise to cruel or unusual confinement.  *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (finding no Eighth Amendment violation as a matter of law where inmate was exposed to raw sewage from an overflowed toilet in his cell for four days); *Whitnack*, 16 F.3d at 955-58 (reversing jury verdict for plaintiff and finding no Eighth Amendment violation where exposure to vomit in sink, dried feces

on toilet seat, and dried urine puddles on floor "lasted not more than 24 hours before the availability of adequate cleaning supplies"); *Evans v. Fogg*, 466 F. Supp. 949 (S.D.N.Y. 1979) (holding that prisoner failed to state an Eighth Amendment claim where he alleged that he was confined for 24 hours in refuse-strewn cell and for two days in flooded cell); *cf. Mills v. C.C.A.*, No. 1:10-0015, 2010 WL 5155478, at *5 (M.D. Tenn. Dec. 14, 2010) ("Even if the Court takes as true the allegations that [unsanitary] water flowed from a nearby shower into the Plaintiff's cell three times a week, that this condition occurred for a period of several weeks, and that the water was not promptly cleaned up, these facts simply do not show that he was subjected to the type of extreme deprivation necessary to implicate the Eighth Amendment.").

Plaintiff asserts that on December 30, 2007, she was subjected to her cell being flooded with contaminated toilet water. (Am. Compl. ¶ 22.) She does not state whether her cell remained flooded for a few hours or a few days, however. Nor does she allege that the flooding happened more than once. Nor does she allege the manner in which she was exposed to the toilet water (i.e., was she able to avoid it without substantial difficulty?). Absent such allegations, Plaintiff has failed to plead an Eighth Amendment violation.

As to the claim that mentally-unstable inmates threw feces and urine around Plaintiff's "Unit," the Court finds *Williams v. Luetzow*, No. 2:06-CV-100, 2006 WL 1627468 (W.D. Mich. Jun. 9, 2006) instructive. There, the plaintiff alleged that his twelve-year confinement to administrative segregation constituted an Eighth Amendment violation because, among other things, he was housed with mentally-ill inmates who created unsanitary conditions in the unit:

> Plaintiff contends that recent wholesale confinement of mentally ill prisoners to administrative segregation has resulted in the unit becoming an extremely stressful and volatile environment. Mentally ill prisoners are frequently unable or unwilling to take care of their

19

> basic hygienic needs. Most never shower and live in their own filth
> for weeks at a time. Plaintiff contends that some cells resemble giant
> septic tanks with excrement smeared on walls and doors, and with
> puddles of urine on the floor. As a result, the smell of fermenting
> urine and feces in administrative segregation is common and
> inescapable. . . . Mentally ill prisoners also throw urine and feces at
> other prisoners and staff and self-mutilate and attempt suicide. . . .
> Plaintiff claims that all these conditions combined inflict
> "psychological torture" on Plaintiff and are slowly "driving [him]
> insane."

*Williams*, 2006 WL 1627468, at *5. Emphasizing that an Eighth Amendment conditions-of-

confinement claim requires an inmate to show "that he was deprived of the 'minimal civilized

measure of life's necessities,'" the court held that "Plaintiff fails to state an Eighth Amendment

claim." *Id.* at *6 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Bey v. Luoma*,

No. 2:06-CV-243, 2009 WL 884630, at *2-3 (W.D. Mich. Mar. 30, 2009) (holding, where plaintiff

alleged that defendants exposed him to human waste fumes for approximately six months causing

sickness, migraine headaches, nosebleeds, and lack of appetite, that defendants' conduct did not

violate the Eighth Amendment). The Court does not doubt that being housed in a unit with

mentally-ill inmates who create unsanitary conditions throughout the unit is unpleasant, but given

that Plaintiff has not averred (1) any physical sickness resulting from these unsanitary conditions,(2)

the amount of time she was exposed to the conditions, or (3) her ability to avoid exposure to the

conditions, the Court cannot conclude that Plaintiff's vague allegations regarding feces and urine

in the housing unit state an Eighth Amendment violation. *See Williams*, 2006 WL 1627468, at *5;

*Bey*, 2009 WL 884630, at *2-3.

### 5. Plaintiff's Restrictive Confinement Allegations Do Not State a Claim of Cruel and Unusual Punishment

The Court considers Plaintiff's Eighth Amendment restrictive-confinement claims together—that she was "Toplocked in [a] cell twice where Toplock was not actually used at the facility" (Pl.'s Resp. at 8), that she was placed in a special self-mutilation cell, that she was denied a single security classification review, and, relatedly, that she was unjustifiably kept in administrative segregation from late January 2008 (when her 30-day detention expired) to mid-February 2008 (Am. Compl. ¶¶ 20, 25, 34). None of these state an Eighth Amendment violation. *See Estep v. Million*, 191 F.3d 451 (table), 1999 WL 776202, at *1 (6th Cir. 1999) ("[Plaintiff] feels that his extended stay in segregation violated his Eighth Amendment right to be free from cruel and unusual punishment. . . . Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim."); *Voorhees v. Huber*, No. 1:10CV-76-M, 2010 WL 3211046, at *1-2 (W.D. Ky. Aug. 12, 2010) (finding complaint stated no Eighth Amendment violation where it alleged that "[p]laintiff was placed in the 'drunk tank' for thirty-one hours as a form of discipline without a blanket, sheet or mattress; and the floor of the 'drunk tank' had a hole in the middle that contained feces and used toilet paper"); *Green v. Inge*, No. 10-12804, 2010 WL 3169847, at *3 (E.D. Mich. Aug. 11, 2010) (holding that seven days toplock did not result in the denial of "the minimal civilized measure of life's necessities"); *Portman v. Wilson*, No. 10-CV-169-KSF, 2010 WL 2870050, at *8 (E.D. Ky. Jul. 19, 2010) ("[Plaintiff's] claim that his temporary placement in 'the hole' violated either his Fifth Amendment due process rights, or his Eighth Amendment right to remain free from cruel and unusual punishment, simply lacks merit"); *Kelly v. Hursh*, No. 2:09-cv-19, 2010 WL 1052664, at *7 (W.D. Mich. Mar. 22, 2010) (finding six-months of

21

administrative segregation did not violate the Eighth Amendment).

> ### 6.  Defendants Have Not Moved The Court to Dismiss Plaintiff's Eighth Amendment Claim for Harassing Cell Searches

Finally, the Court turns to Plaintiff's assertion that during November 2007 she was subjected to sixteen cell searches without evidence of any wrong doing.  (Am. Compl. ¶ 4.)  Perhaps because Plaintiff has not explicitly labeled this an Eighth Amendment violation, and perhaps because Plaintiff does not explicitly identify who subjected her to the repeated cell searches, this claim was not addressed by the moving Defendants.  But as to the former, considering that Plaintiff is proceeding *pro se*, the Court will construe Plaintiff's claim of repeated, unwarranted cell searches as asserting an Eighth Amendment claim.  *See Szaflarski v. Lurie Co.*, No. 90C606, 1991 WL 169356, at *3 (N.D. Ill. Aug. 27, 1991) ("Pro se complaints are to be construed liberally and, if the facts support a particular type of claim, the complaint is to be considered to contain that claim even if the plaintiff did not cite the proper statute or accurately label a claim.").  And as to the latter, Plaintiff has alleged (at least by reasonable inference) that Hardwick was the Assistant Resident Unit Supervisor of Plaintiff's unit in November 2007.  (*See* Am. Compl. ¶¶ 1, 7, 14.)  Accordingly, the Court does not recommend dismissal of this alleged Eighth Amendment violation against Hardwick at this time.

### C.  Plaintiff's Equal Protection Claims Against Hardwick, Lee, and DeAngelo

Plaintiff asserts that (1) Hardwick (along with Sanders, Cole, and Stringer-Hill) failed to timely review her security classification, and, relatedly, (2) Hardwick, Lee, DeAngelo, and Stovall wrongly classified Plaintiff to administrative segregation and maintained that restrictive security classification longer than she deserved, and (3) Hardwick violated the Equal Protection Clause by failing to allow Plaintiff to move to a non-smoking unit "while other inmates were allowed to

22

move." (Am. Compl. ¶¶ 7, 21, 29-34.) Hardwick, Lee, and DeAngelo have responded by asserting that "[a]bsent some allegation or proof that the law was applied differently to Plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated." (Defs.' Mot. Dismiss at 7.)

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. When determining whether a state actor's conduct violates the Equal Protection Clause, the court may analyze the conduct under heightened (i.e., strict or intermediate) scrutiny or simply demand that the state proffer a rational basis for the disparate treatment. *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011). Generally, a state practice does not trigger heightened scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976); *Rondigo*, 641 F.3d at 681-82. As to the equal protection allegations involving the moving Defendants (Hardwick, Lee, and DeAngelo), Plaintiff has neither suggested that their alleged discriminatory conduct infringed upon a fundamental right nor that their conduct discriminated on the basis of Plaintiff's membership in a suspect class.[8] Accordingly, the Court will not review their conduct under heightened scrutiny. But this does not mean, as Defendants urge, that Plaintiff's equal protection claims fail altogether.

In this case, Plaintiff essentially argues a "class of one" theory of discrimination: "the state treated [her] differently from others similarly situated and that there is no rational basis for such difference in treatment." *See Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005); *Village*

---

[8]Plaintiff has alleged, however, that Defendant Sanders inappropriately commented on Plaintiff's religious preference. (Am. Compl. ¶ 3.) Sanders is not a presently moving defendant, however.

*of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000).  To prevail on such a theory, a plaintiff must

show that others who received different (presumably better) treatment were "similarly situated in

all relevant respects."  *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir.

2011) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Additionally, a plaintiff must show that the adverse treatment she experienced was "'so unrelated

to the achievement of any combination of legitimate purposes that the court can only conclude that

the government's actions were irrational.'"  *Id.* (quoting *Warren*, 411 F.3d at 710-11).   "This

showing is made either by negativing every conceivable reason for the government's actions or by

demonstrating that the actions were motivated by animus or ill-will."  *Id.* (citing *Warren*, 411 F.3d

at 711.)

> *1.  Plaintiff's Equal Protection Claim Based on Extended Administrative Segregation
> Fails as a Matter of Law*

Plaintiff asserts that Hardwick, Sanders, Cole, and Stringer-Hill did not review her security

classification status in a timely manner in violation of constitutionally guaranteed equal protection.

(Am. Compl. ¶ 29.)   In particular, according to Plaintiff, MDOC Policy Directive 04.04.120

demands that the SCC review a prisoner in administrative segregation at intervals of no greater than

seven calendar days.  (*See* Am. Compl. Ex. B at ECF 28.)  Plaintiff's argument is that on January

10, 2008, while in detention, SCC classified her to administrative segregation to begin after her

detention ended on January 16, 2008 but did not, contrary to MDOC policy, review her security

status until January 24, 2008.[9]  The problem with this argument is that Plaintiff does not allege any

---

[9]Plaintiff has attached the relevant portion of Policy Directive 04.05.120; it provides, in
relevant part:

> Housing unit team members and SCC shall regularly review the
> behavioral adjustment of each prisoner classified to administrative

prisoner who was similarly situated to Plaintiff in all relevant respects and whom Defendants treated differently.  Although her Response to Defendants' Motion to Dismiss discusses another inmate, Collier, Plaintiff only draws a comparison between herself and Collier in regards to the length of their respective stays in segregation—not that the SCC reviewed Collier's status on a weekly basis in accordance with Policy Directive 04.04.120 but refused to do the same for Plaintiff.  (*See* Pl.'s Resp. to Defs.' Mot. Dismiss at 6-7.)  Accordingly, the Court finds that Plaintiff has failed to state an equal protection violation against Defendant Hardwick for the untimely review of her security status.

Regarding Plaintiff's extended stay in segregation, the Amended Complaint is void of any allegations regarding other prisoners similarly situated to Plaintiff in all relevant respects whom the SCC kept in segregation for a shorter time than Plaintiff.  Perhaps in an attempt to cure this deficiency, Plaintiff asserts in her Response that Hardwick and Sanders released inmate Collier from administrative segregation after only two weeks.  (Pl.'s Resp. to Defs.' Mot. Dismiss at 7.)  In contrast, it appears that Defendants continued Plaintiff's segregation for about one month post-detention.  (*See* Am. Compl. ¶¶ 25, 34, Ex. A at ECF 23.)  Plaintiff further asserts that Collier was found guilty of causing another inmate to receive "several stitches on her face," and that Collier

---

segregation or protective segregation, including those prisoners also serving a detention sanction for misconduct. The reviews shall be conducted at least weekly, at intervals of no more than seven calendar days, during the first two months in segregation and at least every 30 calendar days thereafter until the prisoner is reclassified to general population status.

(Am. Compl. Ex. C at ECF 43 ¶ GGG.)  The effective date on the version attached to the Amended Complaint is July 21, 2008 which is after the alleged misconduct.  Because the Court determines that Plaintiff has not stated an Equal Protection claim, the Court may assume, in favor of Plaintiff, that similar seven-day language appears in the policy directive applicable in January 2008.

received a misconduct while in segregation.  (Pl.'s Resp. at 7.)  In comparison, Plaintiff argues, a nurse determined that the cut on inmate Watkins was only "superficial," and Plaintiff had "no negative reports" while in segregation.  (*Id.*)

The allegations in the Amended Complaint—as supplemented with those set forth in her Response—are still insufficient for this Court to reasonably infer that Collier and Plaintiff were "similarly situated in all relevant respects."  *See Rondigo*, 641 F.3d at 682.  Plaintiff's Amended Complaint indicates that she was required to stay in administrative segregation because she needed therapy due to her denial of the attack on Watkins.  (Am. Compl. ¶ 31.)  The Administrative Segregation Behavior Review forms attached to Plaintiff's Amended Complaint ("Review Forms") bear this out.  During the January 24 and January 31, 2008 interviews with Hardwick, Plaintiff denied attacking Watkins.  (Am. Compl. Ex. B at ECF 35-36.)  On February 7, 2008, Plaintiff commented that "the cut was superficial."  (Am. Compl., Ex. B at ECF 37.)  On February 14, 2008, however, Plaintiff stated, "I'm sorry that she got cut.  I don't know what I should do different."  (Am. Compl. Ex. B at ECF 49.)  And on this date, Defendant Hardwick recommend that Plaintiff be reclassified to the general population, and Defendants DeAngelo and Hunter agreed.  (*Id.*)  In contrast to what is reflected in the Review Forms, Plaintiff has not alleged that Collier repeatedly denied the assault charges.  Further, the Review Forms suggest that Defendants' decision to continue Plaintiff's stay was rationally related to the legitimate penological interest of rehabilitation.  Accordingly, the Court finds that Plaintiff has not stated an equal protection claim against Defendants Hardwick, Lee, or DeAngelo for extending Plaintiff's stay in administrative segregation.

> 2.  *Plaintiff Has Adequately Pled an Equal Protection Claim Based on Hardwick's Allegedly Discriminatory Smoking Classification*

The Court cannot similarly dismiss Plaintiff's claim that Hardwick arbitrarily denied

26

Plaintiff's request to be transferred to a non-smoking unit in violation of the Equal Protection Clause. But before explaining why, this Court provides a more detailed discussion of the class-of-one legal theory in hopes that it will aid the litigants in this case going forward.

There is some uncertainty within the Sixth Circuit as to the scope of a class-of-one equal protection claim. After the Supreme Court held in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) that class-of-one equal protection claims are cognizable, it held in *Engquist v. Oregon Dept. of Agriculture* that the "'class of one' theory of equal protection has no place in the public employment context." 553 U.S. 591, 594 (2008). Language in the opinion, however, suggests that the Court's holding may not be limited to the public employment context but instead preclude such claims where the "form[] of state action . . . by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603. In particular, the Court provided the following hypothetical:

> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances.

*Id.* at 603-04.

In *JDC Mgmt., LLC v. Reich*, Chief Judge Paul Maloney of the U.S. District Court for the Western District of Michigan held that the plaintiff could not bring a class of one claim against the Michigan Lottery Commission for the Commission's denial of license applications. He reasoned

that

> *Engquist* . . . nominally held only that the class of one theory does not apply to decisions made by government in its role as employer. But its rationale *strongly* suggests that the class-of-one theory is also unavailable in other contexts where government officials must make subjective discretionary decisions, e.g., in its role as a sovereign and regulator. . . . Sister courts around the country are increasingly taking this view . . .

644 F. Supp. 2d 905, 910 (W.D. Mich. 2009) (citing cases).[10]

Earlier, in *Franks v. Rubitschun*, 312 F. App'x 764 (6th Cir. 2009) (Merritt, Moore, Cole, JJ.) (unpublished), the Sixth Circuit reversed the district court's *sua sponte* dismissal of the plaintiff's equal protection claim and remanded to the district court to consider whether the plaintiff had a class-of-one claim for allegedly arbitrary parole board decisions.  In so doing, the panel remarked in a footnote:

> [*Engquist*] held that the " 'class of one' theory of equal protection has no place in the public employment context."  Some courts have read *Engquist* broadly to suggest that individualized, discretionary decisions can rarely, if ever, be challenged in class-of-one actions. *See, e.g., United States v. Moore*, 543 F.3d 891, 900-01 (7th Cir. 2008); *Adams v. Meloy*, 287 Fed. Appx. 531, 534 (7th Cir. 2008). But *Engquist*'s holding was specifically limited to the public-employment context, the concerns of which the Court described as "unique." *Engquist*, 128 S.Ct. at 2156, 2151. And its reliance on the "crucial difference" between government acting as sovereign and government

---

[10]In subsequent cases, courts in the Western District of Michigan have also extended *Engquist* to the prison context.  *See Dorch v. Munoz*, No. 2:11-cv-150, 2011 WL 1987621, at *8 (W.D. Mich. May 20, 2011) ("While the Supreme Court's holding in *Engquist* was limited to the employment context, the Court's broad language is equally relevant to a variety of prison decisions, including this one."); *Davis v. Prison Health Services*, No. 1:10-cv-969, 2010 WL 5016501, at *4 (W.D. Mich. Dec. 3, 2010) ("While *Engquist* involved an equal protection claim arising in the context of public employment, the rationale of that holding arguably extends to a prison setting where government officials must make subjective discretionary decisions, and it is well accepted that courts are to afford prison officials great deference in their management of correctional facilities.").

> acting as employer, *id.* at 2151, suggests that *Engquist*'s discussion
> of discretionary decisionmaking should not control the case at hand.

312 F. App'x at 766 n.3.

Chief Judge Maloney issued the opinion in *Franks* on remand.  There, he concluded that the Sixth Circuit panel's opinion in *Franks* was unpublished and that the footnote was dicta.  *Franks v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at *8 (W.D. Mich. Mar. 31, 2010).  He reasoned (in the alternative) that because the Michigan Parole Board's decisionmaking was "necessarily subjective and based on an assessment of the plaintiff's personal characteristics" that a class-of-one claim for the Board's alleged arbitrary decisionmaking was not cognizable. *Id.* (relying on *Engquist* and *JDC Mgmt.* and cases cited therein).

The Court does not see the need to resolve this question of law at this juncture.  Defendants have not argued  that Hardwick was making a subjective, discretionary decision.  Should such facts come to light on summary judgment, and there is no narrower means of deciding Plaintiff's class-of-one claim (e.g., a rational basis exists for Hardwick's decision), this Court may need to address whether *Engquist* applies in this context.

Plaintiff has pled that she sent several requests to Hardwick in November 2007 to be "moved out of the Unit and into a Unit for non-smokers," and that she was forced to stay "while other inmates were allowed to move."  (Am. Compl. ¶ 7.)  And, in contrast to her extended-segregation equal protection claim, the attachments accompanying the Amended Complaint do not undermine Plaintiff's smoking-based equal protection claim—rather, they support it.  In a grievance attached to the Amended Complaint, Plaintiff stated that "every other level 2 non-smoker at [SCF] has the option to move to the new non-smoking Unit[;] ARUS Hardwick is discriminating against me by not allowing me the opportunity to live in a smoke free housing Unit.  Hardwick wants me in her

29

Unit so she can routinely harass me." (Am. Compl. Ex. B at ECF 18.) Reading the entirety of the Amended Complaint in the light most favorable to Plaintiff, a reasonable inference is that an inmate's security classification and smoking status are "relevant respects" for comparison, *see Rondigo*, 641 F.3d at 682, and Plaintiff has alleged that she is "similarly situated" in these two respects to the inmates who moved to the non-smoking unit. Defendants have provided no other "relevant respects" for this Court to consider. As to the second prong, Plaintiff has alleged that Hardwick's decision was not rationally related to a legitimate interest but instead made to harass Plaintiff. Thus, Plaintiff has pled that Hardwick's allegedly discriminatory conduct was "motivated by animus or ill-will." *See Rondigo*, 641 F.3d at 682. Accordingly, Plaintiff's allegations that Hardwick arbitrarily refused to transfer her to the non-smoking unit states a class-of-one equal protection claim upon which relief may be granted.

### D. Plaintiff's Claims Against Defendants Lee and Ward Should Be Dismissed

Plaintiff alleges that Defendant Lee violated Plaintiff's rights under the Eighth Amendment and Equal Protection Clause by giving Plaintiff an excessive segregation stay after her detention for the assault on Watkins expired. (Am. Compl. ¶¶ 31, 33.) Plaintiff also asserts that Defendants Lee and Ward violated the procedural protections of the Due Process Clause by issuing both a minor misconduct and a notice of intent, and violated both due process and her right to access the courts by confiscating her legal work. (Am. Compl. ¶¶ 39, 40, 44.)

30

>    1.  *Plaintiff's Eighth Amendment and Equal Protection Claims Against Lee Should Be Dismissed*

The Court has already addressed Plaintiff's claims against Lee premised on excessive segregation by analyzing nearly identical allegations against Hardwick.  In short, a one-month extended stay in segregation does not satisfy the objective prong of an Eighth Amendment claim, and Plaintiff has not alleged facts enabling the Court to reasonably infer that she was similar in all relevant respects to inmates who were given shorter stays in segregation.  Accordingly, the Court recommends that these two claims against Lee be dismissed.

>    2.  *Plaintiff's Procedural Due Process Claims Against Lee and Ward Should Be Dismissed*

Plaintiff raises two procedural due process claims against Lee and Ward.  First, Plaintiff asserts that Lee violated MDOC Policy Directive 04.07.112 by issuing a minor misconduct in December 2007 for excessive property and then issuing a notice of intent in February 2008 for the same issue.  (*See* Am. Compl. Ex. B at ECF 13; Am. Compl. ¶ 36.)  According to Plaintiff, Defendant Ward condoned Lee's policy violation by inadequately responding to the corresponding grievance.  (Am. Compl. ¶ 36.)  Second, Plaintiff asserts that on April 15, 2008, Lee and Ward confiscated her legal materials without providing her constitutionally mandated due process.  (*See* Am. Compl. ¶ 41.)  In particular, Plaintiff grieved that SCF did not provide a hearing within seven days of the confiscation as required by Policy Directive 04.07.112, and that Ward inappropriately reviewed Plaintiff's grievance on the matter because Ward herself helped take the legal materials.  (*See* Am. Compl. Ex. B. at ECF 10-11; Ex. C at Dkt. 24-1 ECF 41, Ex. C at Dkt. 24-2 ECF 12.)  The Court finds that neither incident violated the Due Process Clause.

In *Parratt v. Taylor*, 451 U.S. 527 (1981) "the Supreme Court held that the negligent

deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). In *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984) the Court extended the doctrine to intentional deprivations. *Id.* "Thus, the '*Parratt* doctrine' permits dismissal of procedural due process claims brought under 42 U.S.C. § 1983 based on the fact that the state provides the claimant an adequate postdeprivation remedy if: 1) the deprivation was unpredictable or 'random'; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty." If these criteria are met, then the plaintiff has the burden to plead and prove that the state does not provide adequate post-deprivation remedies for the unauthorized deprivation. *Id.*; *see also Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) ("We have held that 'a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong.'" (quoting *Copeland*, 57 F.3d at 479)).

In this case, Plaintiff argues that Lee and Ward violated MDOC Policy Directive 04.07.112 by issuing both a minor misconduct and a notice of intent, and by depriving her of a hearing within seven days of confiscating her materials. Accordingly, Plaintiff has not pled that Lee or Ward acted in accordance with state policy. Rather, the allegations provide that Lee and Ward engaged in the type of unpredictable, unauthorized acts that trigger *Parratt* and its progeny. *See Kennedy*, 413 F. App'x at 840 ("[Plaintiff's] pleadings charge the [Alger Maximum Correctional Facility] officials with taking unauthorized action; therefore he has not pled that these actions were done in accordance with an established state procedure. The *Parratt* doctrine thus applies, and [Plaintiff] must plead inadequate post-deprivation remedies." (internal quotation marks and citations omitted)).

32

In situations where, as here, the inmate alleges unauthorized deprivation of property, courts have found that Michigan provides adequate post-deprivation remedies and, accordingly, have dismissed the inmate's procedural due process claims under *Parratt*:

> Plaintiff claims that Defendant . . . violated his procedural due process rights when he failed to follow the "explicit mandatory language" of MDOC policy directive 04.07.112, which requires that an inmate be given notice and a hearing before his property is destroyed. . . .
>
> The Sixth Circuit has found that "Michigan provides several adequate post-deprivation remedies," such as a claim and delivery action under Michigan Court Rule 3.105, a civil action to recover damages for goods unlawfully taken under Michigan Compiled Laws § 600.2920, and a small claims action under § 600.8401(1). *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Hardin v. Fox*, No. 94-1909, 1995 WL 118990, at **1 (6th Cir. 1995) (unpublished). Where a plaintiff claiming a deprivation of property without due process of law cannot show that state court remedies are inadequate to redress the alleged wrong he has suffered, the due process claim fails as a matter of law.

*Lyons v. Caruso*, No. 06-13381-BC, 2006 WL 3510895, at *4 (E.D. Mich. Dec. 6, 2006); *see also Kennedy v. Bonevelle*, 413 F. App'x at 840 (*Parratt* doctrine applied to allegedly wrongful confiscation of legal materials); *Clark v. Havelka*, No. 2:10-CV-11994, 2010 WL 2541232, at *4 (E.D. Mich. Jun. 21, 2010) (same). In accordance with these authorities, Plaintiff's procedural due process claims against Lee and Ward should be dismissed.

### 3. Plaintiff Has Failed to Adequately Plead an Access-To-Courts Claim Against Defendants Lee and Ward

Regarding Defendants Lee and Ward's April 2008 confiscation of Plaintiff's legal work, Plaintiff has explained, in a letter to Warden Washington, that

> I am current[ly] in court with a [f]ederal [h]abeas [p]etition, a pending case and also civil[] proceedings and I was supposed to be granted a hearing [on the confiscated materials] within seven

33

> business days.  On May 10, 2008[,] an attorney came to review one
> of my cases, however all my . . . legal work she needed had be[e]n
> confiscated.

(Pl.'s Resp. at ECF 26.)  In her Response to Defendants' Motion to Dismiss, Plaintiff further

explains that

> Plaintiff's family paid [an] attorney to visit and consult with Plaintiff
> on [her] criminal case.  Due to the wasted trip by [P]laintiff's attorney
> and wasted money by Plaintiff's family this was [P]laintiff['s] last
> visit with an attorney.  Plaintiff was unable to make arrangements for
> attorney to take on criminal case.  Plaintiff filed [f]ederal [h]abeas
> [p]etition pro per and did not have money to throw away.  Instead of
> legal mail going to the attorney's office it came straight to [SCF].

(Pl.'s Resp. to Defs.' Mot. Dismiss at 4.)  Plaintiff never received the district court's decision

denying her petition for habeas, and the docket for that case reflects that the Sixth Circuit dismissed

her case because her appeal was untimely.

To bring an access-to-courts claim, a prisoner must "plead and prove prejudice stemming

from the asserted violation."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  "Examples of

actual prejudice to pending or contemplated litigation include having a case dismissed, being unable

to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578

(6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)); *see also Martin v.

Davies*, 917 F.2d 336, 340 (7th Cir. 1990) (giving as examples of prejudice: missed court dates,

inability to make timely filings, denial of entitled legal assistance, and loss of a case which could

have been won.).[11]

---

[11]In addition, a prisoner must demonstrate that the claim allegedly prejudiced was not frivolous.  *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he right [to access the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").  Thus, "the underlying cause of action, whether anticipated or

34

In this case, the Court cannot reasonably infer from the allegations in Plaintiff's Amended Complaint that Lee and Ward's conduct proximately caused the prejudice she claims: failing to timely file an appeal in her federal habeas case. *See Armstrong v. Scribner*, No. 06cv852, 2008 WL 268974, at *17 (S.D. Cal. Jan. 30, 2008) (explaining that an element of an access-to-court's claim is proximate cause: "The proximate cause analysis focuses on foreseeability—was it foreseeable that the state actor's actions would cause the deprivation of the prisoner's right to access the courts?" (citing *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007) *judgment vacated in other part by Hust v. Phillips*, 129 S.Ct. 1036 (Jan. 26, 2009))); *cf. Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005) (explaining, in the context of a First Amendment retaliation claim, "a court may consider the reasonably foreseeable consequences that would follow from a retaliatory act in considering whether the plaintiff suffered an adverse action. . . . [A] defendant would not be held responsible for consequences unless his conduct were the proximate cause of them."). On May 8, 2008, Plaintiff notified SCF "administration" of an upcoming attorney visit. (Am. Compl. ¶ 41.) Assuming then, that it was foreseeable to Lee or Ward that the attorney would need to review the confiscated legal materials during the visit, it is still a stretch to infer that without the materials, the attorney would decline (or discontinue) representation of Plaintiff. And even assuming that Lee and Ward could foresee that their acts would cause the attorney not to represent Plaintiff, there is still the intervening act of other SCF employees failing to provide Plaintiff with the mailed copy of the denial of her petition in August 2008. Thus, even drawing reasonable inferences from the allegations in the Amended Complaint, the links in the causal chain are too weak for this Court to say that Lee or

---

lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415. Plaintiff has not pled the claims raised in her federal habeas case or the facts that support those claims.

Ward could have reasonably foreseen that their April 2008 confiscation of Plaintiff's legal materials would result in August 2008 mail being directed to SCF instead of her putative attorney, and, therefore, Plaintiff would ultimately fail to timely appeal the district court's decision in her federal habeas case.[12]

In sum, Plaintiff has failed to state a claim against Defendants Lee and Ward upon which relief may be granted.

### E. Plaintiff's Claims Against Defendant Jones Should Be Dismissed

Defendant Jones was the hearing officer on Plaintiff's minor misconduct charge for possession of a "walkman." (Am. Compl. ¶ 5; *see also* Am. Compl. Ex. A at ECF 48.) Plaintiff claims that in finding her guilty, Jones erroneously referenced (or relied upon evidence of) "headphones" instead of the documented walkman. (*Id.*) As a result of the minor misconduct

_____

[12]This Court takes this opportunity to clearly demarcate the scope of its present recommendation. Defendants have moved to dismiss Plaintiff's access-to-courts claim entirely because Plaintiff has not identified who at SCF allegedly deprived her of a copy of the district court's decision in her federal habeas case: "Not only does [paragraph 47 of the Amended Complaint] fail to demonstrate actual injury, Plaintiff has made no attempt to identify the party allegedly responsible for 'never' giving her the decision." (Defs.' Mot. Dismiss at 5.) In December 2009, Plaintiff wrote to the warden at WHV in an attempt to uncover this information. The warden replied,

> Due to the closure of [SCF] in May[] 2009, I cannot tell you which employees were assigned to their mailroom on August 15, 16 and 17, 2008. I also do not have ready access to the legal mail log from that facility on those dates. *Documentation from closed correction facilities is stored in a retention facility.*

(Pl.'s Resp. at ECF 21 (emphasis added).) Further, in Plaintiff's presently pending Second Motion to Amend (Dkt. 37) she asserts an access-to-courts claim against Defendants Stovall and Cole for the undelivered decision. (Dkt. 37, Pl.'s 2d Mot. Amend at ECF 17.) To resolve the present Motion to Dismiss, it is sufficient to dismiss Plaintiff's access-to-courts claim against the moving Defendants: Hardwick, Ward, Lee, Campbell, DeAngelo, and Jones. There is nothing to suggest that these Defendants proximately caused the default in Plaintiff's habeas case. This Court saves for another day the decision of whether Plaintiff's access-to-courts claim fails in its entirety.

finding, Jones sentenced Plaintiff to five days toplock, and two days loss of privileges. (Am. Compl. Ex. A at ECF 48; Pl.'s Resp. at 5.) Plaintiff asserts that Jones' guilty finding without competent evidence amounts to a procedural due process violation. (Am. Compl. ¶ 5.)

Procedural Due Process claims are examined in two distinct stages. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (citing, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right [does a court] continue to consider whether the deprivation of that interest contravened notions of due process." *Id.* In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court found that a prisoner has a protected liberty interest in good-time credits:

> [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Id.* at 557. But Plaintiff does not assert, and the misconduct appeal form does not reflect, that she was deprived of the type of liberty interest at issue in *Wolff*. *See Manley v. McComb*, No. 1:11-cv-149, 2011 WL 1900133, at *3 (W.D. Mich. May 19, 2011) ("Plaintiff does not allege that he lost any good-time credits as a result of the conviction, nor could he. Sanctions for Class II misconducts are limited to a maximum of five days of toplock, 30 days of loss of privileges, 40 hours of extra duty, and restitution." (citation omitted)).

Nor did Plaintiff's misconduct conviction result in a "significant, atypical deprivation." *Nali v. Michigan Dept. of Corrections*, No. 2:10-cv-29, 2011 WL 1598990, at *5 (W.D. Mich. Apr. 27,

2011) ("Even in the absence of a protectible liberty interest in disciplinary credits, an [MDOC] prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation." (citing *Sandin v. Connor*, 515 U.S. 472 (1995))). Here, Jones sentenced Plaintiff to five days toplock, and two days loss of privileges. Courts have found that similar punishments do not constitute significant, atypical deprivations. *See, e.g. Manley*, 2011 WL 1900133, at *3 ("A brief sentence of 'toplock' does not amount to an atypical or significant hardship." (citation omitted)); *Hall v. Fuqua*, No. 10-CV-13350, 2010 WL 3768345, at *2 (E.D. Mich. Sept. 21, 2010) ("Plaintiff's claims are frivolous and fail to state a claim because his detention in segregation and loss of privileges for thirty days were not 'atypical and significant hardship[s] on [him] in relation to the ordinary incidents of prison life.'" (quoting *Sandin v. Connor*, 515 U.S. 472 (1995))); *Askew v. Blair*, No. 1:07-cv-636, 2008 WL 927766, at *5 (W.D. Mich. Apr. 4, 2008) ("A five-day sentence of 'toplock' for each misconduct charge does not amount to an atypical or significant hardship."); *Booth v. Loll*, No. 05-72905, 2008 WL 859413, at *10 (E.D. Mich. Mar. 27, 2008) ("Although plaintiff was found not guilty of the major misconduct, the potential sanctions he would have faced upon a guilty finding are detention, toplock, loss of privileges, assignment of extra duty, and restitution. Whichever of these punishments was imposed, the increase of one's security level does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life." (internal citations omitted)).

Because Jones did not deprive Plaintiff of a protectible liberty interest, the procedural safeguards of the Due Process Clause are not implicated; Plaintiff has therefore failed to state a claim against Jones upon which relief may be granted.

### F. Plaintiff's Claims Against Defendant Campbell Should Be Dismissed

Plaintiff asserts that on December 20, 2007, she wrote Defendant Campbell about Plaintiff's then-upcoming review with the SCC. (Am. Compl. ¶ 21.) She informed Campbell that Defendants Hardwick and Sanders were on the SCC and stated, "I don't feel as if I can get a fair decision if Sanders and Hardwick [and] her friend Jones are on[] the board. I have several grievances pend[ing] against Sanders [and] Hardwick for the same reason [and] people who set me up." (Am. Compl. Ex. A at ECF 41.) The Court has already concluded that Plaintiff has not adequately pled facts for the Court to infer that Hardwick, Lee, or Ward violated rights under the Eighth Amendment or the Equal Protection Clause by first classifying Plaintiff to administrative segregation and then extending her stay in segregation for about one month. It follows, *a fortiori*, that Campbell's failure to prevent conduct which itself does not amount to a constitutional violation cannot be a constitutional violation.

Plaintiff also asserts that Campbell failed to remedy Lee and Ward's alleged wrongful confiscation of her legal work in April 2008. (Am. Compl. ¶ 39.) But the Court has already concluded that Plaintiff has not stated a claim against Lee and Ward for their involvement in taking Plaintiff's legal materials, and, again, Plaintiff asserts no novel legal theory against Campbell. Moreover, it is well-settled that the failure to remedy a constitutional wrong is not, without more, a constitutional wrong. Persons in a supervisory role, such as Campbell, are not liable under § 1983 merely because they are aware of an alleged violation and fail to act—this holds even if the omission is the "failure [to] remedy the ongoing effects of a constitutional violation." *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that [the MDOC director] failed to remedy the situation after he had been

39

informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Seaton v. Sova*, No. 1:08-cv-1131, 2009 WL 2132728, at *9 (W.D. Mich. July 10, 2009) ("[Section] 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.").

Accordingly, Plaintiff's claims against Campbell should be dismissed.[13]

### G. Plaintiff's Claims Against the Moving Defendants In Their Official Capacity Should Be Dismissed

Plaintiff's claims for damages against the moving Defendants in their official capacities are barred by Eleventh Amendment. The Eleventh Amendment bars suit in federal court against a state (and its departments or agencies) unless the state has waived its sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court, *see Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004), and, moreover, a suit against a state officer in her official capacity is, for sovereign immunity purposes, a suit against the state, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Accordingly, all claims for damages against any moving Defendant in her official capacity should be dismissed.

However, claims seeking prospective injunctive relief compelling a state official—in his official capacity—to comply with federal law are not barred by the Eleventh Amendment. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) ("Under the *Ex parte Young* exception,

---

[13]Plaintiff has also alleged that Campbell was "over" the investigation by the Michigan State Police into the attack on Watkins. (Am. Comp. ¶ 45.) The Court is unable to discern any wrongdoing on the part of Campbell from this vague allegation.

a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury." (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974))). But Plaintiff has not alleged with sufficient particularity that any of the moving Defendants now work at WHV. (*See* Am. Compl. at ECF 12 (conclusory allegations of harassment against "Defendants named in this complaint who are employed at" WHV).) Although Defendants note that Jones presently works at WHV, Plaintiff has failed to state a claim against Jones for her conduct at SCF, and has pled no facts that allow this Court to reasonably infer any ongoing wrongdoing by Jones. Accordingly, Plaintiff's claims for injunctive relief against the moving Defendants in their official capacities should be dismissed.

## III. RECOMMENDATION AND CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that Defendants' Motion be GRANTED IN PART and DENIED IN PART. All claims for damages against the moving Defendants in their official capacities should be DISMISSED WITH PREJUDICE. As for Plaintiff's claims against Defendants in their individual capacities or in their official capacities for injunctive relief, Defendants have moved to dismiss those claims because of pleading deficiencies but have not adequately demonstrated that amendment would be futile. *See Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) ("'When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend.'" (quoting *PR Diamonds, Inc., v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004))). Accordingly, all claims against Hardwick in her individual capacity and in her official capacity for injunctive relief should be DISMISSED WITHOUT PREJUDICE except for (1) Plaintiff's Eighth Amendment claim premised on allegedly numerous, unwarranted

41

cell searches, and (2) Plaintiff's Equal Protection Clause claim premised on Hardwick's allegedly arbitrary denial of a transfer to a non-smoking unit. Plaintiff's individual capacity and official capacity claims for injunctive relief against Ward, Lee, Campbell, DeAngelo, and Jones should be DISMISSED WITHOUT PREJUDICE. Plaintiff's access-to-courts claim insofar as it is not premised on the conduct of Hardwick, Ward, Lee, Campbell, DeAngelo, or Jones should not be dismissed at this time.

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE


Dated: August 1, 2011

42

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Report and Recommendation was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 1, 2011.

s/Jane Johnson
Deputy Clerk