UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELICIA MARIE DYER,

       Plaintiff,                       Civil Action No. 10-cv-10130

    v.                               District Judge Mark A. Goldsmith
                                      Magistrate Judge Laurie J. Michelson

SHADEHAEDA HARDWICK, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [71]**

Plaintiff Felicia Marie Dyer, a Michigan Department of Corrections prisoner proceeding *pro se*, has filed a prisoner civil rights action against 14 former or current MDOC employees alleging that they violated her constitutional rights while she was an inmate at the now-closed Robert Scott Correctional Facility. (*See* Dkt. 45, 2d Am. Compl. at ECF Pg ID 775.) All pretrial matters have been referred to this Court. (Dkts. 5, 32.) Now before the Court is Plaintiff's Motion for Preliminary Injunction. (Dkt. 71; *see also* Dkt. 73.) The Court ordered an expedited response from Defendants. (Dkt. 72.) Having carefully reviewed that response and Plaintiff's Motion, the Court finds that oral argument or an evidentiary hearing will not significantly aid in determining whether Plaintiff is entitled to preliminary relief. *See* E.D. Mich. LR 7.1(f).

For the reasons set forth below, this Court RECOMMENDS that Plaintiff's Motion for Preliminary Injunction be DENIED.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed this suit on or around January 5, 2010 and named eleven Defendants: Campbell, Cole, DeAngelo, Hardwick, Hunter, Jones, Lee, Masten, Sanders, Stovall, and Ward. (Dkt. 1 at ECF PgID 2.) On July 20, 2010, Plaintiff filed a Motion for Leave to Amend (Dkt. 24) which this Court construed as an amended complaint ("First Amended Complaint") (Dkt. 33). Plaintiff's First Amended Complaint named three additional Defendants: Bush, Stringer-Hill, and Watson. (Dkt. 24, 1st Am. Compl. at ECF PgID 14.)

On September 15, 2010, six of these fourteen Defendants (Hardwick, Ward, Lee, Campbell, DeAngelo, and Jones) filed a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 26, Defs.' Mot. Dismiss.) On August 1, 2011, this Court issued a Report and Recommendation to grant in part and deny in part the Motion. (Dkt. 38.)[1]

On September 7, 2011, District Judge Mark A. Goldsmith issued an Order adopting the Report and Recommendation. (Dkt. 44.) The Order also granted Plaintiff leave to file another amended complaint to "cur[e] the pleading defects discussed by the Magistrate Judge." (*Id.* at 2.)

---

[1]More specifically, this Court recommended that the District Court (1) dismiss all claims for damages brought against the six moving Defendants in their official capacities with prejudice; (2) dismiss all claims brought against Defendants Ward, Lee, Campbell, DeAngelo, and Jones in their individual capacities without prejudice to Plaintiff's right to file an amended complaint; (3) dismiss all claims except for two brought against Defendant Hardwick in her individual capacity without prejudice to Plaintiff's right to file an amended complaint (it was recommended that Plaintiff's claims that Hardwick subjected Plaintiff to numerous retaliatory cell searches and arbitrarily denied Plaintiff a transfer to a non-smoking unit should not be dismissed for failure to state a claim). (Dkt. 38.)

On October 12, 2011, Plaintiff filed her third complaint ("Second Amended Complaint")[2] which is the complaint that now governs this suit. (Dkt. 45, 2d Am. Compl.)

Plaintiff's Second Amended Complaint named three additional Defendants: Terri Hockenhull, Jane Doe (a mailroom employee), and R. Staplitonba. (Dkt. 45, 2d Am. Compl. at ECF Pg ID 775.) Because this was outside the scope of the amendment permitted by Judge Goldsmith's Order, this Court recommended dismissal of these Defendants. (Dkt. 49.) Plaintiff did not object to this Court's recommendation, and on December 14, 2011 Judge Goldsmith adopted this second report and recommendation. (Dkt. 57.)

On February 15, 2012, twelve of the fourteen Defendants named in the Second Amended Complaint (all save Hunter and Watson who remain unserved) filed a Motion for Summary Judgment. (Dkt. 63.) At Plaintiff's request, the Court has granted Plaintiff an extension of time to file her summary judgment response. (*See* Dkt. 70.) Plaintiff's response is due on May 22, 2012. (Dkt. 70.)

On April 10, 2012 – over two years after this suit was initially filed – Plaintiff moved for a preliminary injunction "challenging the issue of [prison] harassment through cell assignments." (Dkt. 71.)

**B. Allegations in Plaintiff's Second Amended Complaint**

Virtually all of the alleged harms in Plaintiff's Second Amended Complaint took place between November 2007 and November 2008 when Plaintiff was an inmate at the now-closed

---

[2]In other orders this Court has referred to this third complaint as the Third Amended Complaint. No ambiguity exists, however, as the Court referenced Dkt. 45.

3

Robert Scott Correctional Facility ("SCF"). (*See generally*, 2d Am. Compl.)[3] Each of the Defendants named in this suit worked at SCF during the time in question. (2d Am. Compl. ¶¶ 5-21.) As will be made apparent below, Plaintiff has alleged that Defendants harmed her in a myriad of ways during this one-year period.

### *1. Plaintiff's Special Problem Offenders Notice Request*

On October 30, 2007, Plaintiff sent Assistant Resident Unit Supervisor ("ARUS") Shaheedah Hardwick a written request for a Special Problem Offenders Notice ("SPON"). (2d Am. Compl. ¶ 23; 1st Am. Compl. at ECF Pg ID 329.)[4] A SPON documents "dangerous or potentially dangerous offenders, and known or potential conflict situations between offenders" and may be issued upon appropriate investigation. *See* MDOC Policy Directive 03.03.110 (eff. May 20, 2002) *available at* http://www.michigan.gov/corrections/0,1607,7-119-1441_44369---,00.html. Plaintiff's SPON request provided that Chanika Moore, Plaintiff's co-defendant in her underlying criminal case, and another inmate, Toreena Watkins, were planning a "set up" and that one or both inmates had threatened her with a lock, thrown coffee on Plaintiff, and "bumped" Plaintiff. (1st Am. Compl. at ECF Pg ID 329.)

On November 8, 2007, Plaintiff met with Assistant Deputy Warden Annae Sanders. (2d Am.

---

[3]Scott Correctional Facility closed in 2009. MDOC, Annual Report (2009) *available at* http://www.michigan.gov/documents/corrections/2009_Annual_Report_341903_7.pdf. The most recent allegation in Plaintiff's Second Amended Complaint is regarding an event on August 15, 2008. (2d Am. Compl. ¶ 66.)

[4]Plaintiff has not reattached the exhibits to her First Amended Complaint (Dkt. 24) to her Second Amended Complaint (Dkt. 45). The factual allegations in the Second Amended Complaint are very similar to those of the First Amended Complaint, and, given that Plaintiff is proceeding *pro se*, the Court will assume that Plaintiff intended to incorporate the attachments to her earlier complaint to her present one.

Compl. ¶ 24.) Plaintiff alleges that Defendant Sanders referred to Plaintiff's religious preference as "so called Jewish Kosher or whatever" and told Plaintiff that she could not be transferred to another correctional facility because no other facility would accommodate her kosher diet. (1st Am. Compl. at ECF Pg ID 387; 2d Am. Compl. ¶ 24; *but see* 2d Am. Compl. ¶ 25 (alleging that Sanders' "so called" remark was made at another meeting on November 11, 2008).) According to one of two grievances Plaintiff filed against Defendant Sanders, Sanders "tried to force" Plaintiff into protective segregation. (1st Am. Compl. at ECF Pg ID 386.) Either that day or a few days later, Sanders threatened to increase Plaintiff's security level unless Plaintiff agreed that she no longer wanted a SPON. (2d Am. Compl. ¶ 24; 1st Am. Compl. at ECF Pg ID 386.) Plaintiff says that Sanders retaliated against her after Plaintiff grieved Sanders. (2d. Am. Compl. ¶ 88.)

When Plaintiff returned to her unit after one of her meetings with Sanders, she apparently overheard a phone conversation where Hardwick allegedly asked Sanders if Plaintiff had signed off on her SPON request. (1st Am. Compl. at ECF Pg ID 386.) Plaintiff alleges that on November 14, 2007, Hardwick "had . . . Moore being overfamiliar . . . after [Moore] was moved out of the unit." (2d Am. Compl. ¶ 27.)

On November 19, 2007, a SPON was issued against Moore. (2d Am. Compl. ¶ 28.) Moore was transferred to the Women's Huron Valley Correctional Facility two days later. (1st Am. Compl. at ECF Pg ID 382.)

### 2. *Searches of Plaintiff's Cell in November 2007*

Plaintiff alleges that she was subjected to sixteen "cell searches" during November 2007. (2d Am. Compl. ¶ 26.) Plaintiff asserts that Hardwick subjected her to the searches in retaliation for filing grievances. (*Id.* ¶ 67.) Plaintiff says she received a 20-day sanction as a result of the

5

searches. (*Id.*)

### 3. Minor Misconduct Against Plaintiff for Possession of a Walkman

On or around November 16, 2007, SCF correctional officers found a walkman in Plaintiff's cell. (*See* 1st Am. Compl. at ECF Pg ID 360.) Acting ARUS JaNea Jones was the hearing officer on the resulting minor misconduct charge, and Plaintiff claims that in finding her guilty, Defendant Jones erroneously relied upon evidence of "headphones" when the documented contraband was a "walkman." (1st Am. Compl. at ECF Pg ID 360; 2d Am. Compl. ¶ 30.) Defendant Sanders then denied Plaintiff's minor misconduct appeal because Plaintiff failed to attach a copy of the minor misconduct report. (*See* 1st Am. Compl. at ECF Pg ID 360; 2d Am. Compl. ¶ 31.) But Plaintiff alleges that the copy "was attached when [she] sent [the] appeal off through the mail." (2d Am. Compl. ¶ 31.)

### 4. Plaintiff's Request to Transfer to Non-Smoking Unit

Plaintiff allegedly sent Defendant Hardwick several requests in November 2007 to move to a non-smoking unit within SCF. (*See* 2d Am. Compl. ¶ 26.) Plaintiff's November 22, 2007 grievance against Hardwick states that Hardwick yelled, did not grant the move, and wanted Plaintiff to remain in her unit so that she could "routinely harass" Plaintiff. (1st Am. Compl. at ECF Pg ID 380; *see also* 2d Am. Compl. ¶¶ 26, 69.) Resident Unit Manager Tonya Watson responded to the grievance and Assistant Deputy Warden Jodi DeAngelo reviewed it. (1st Am. Compl. at ECF Pg ID 380.)

### 5. Two Work Details

Plaintiff claims that, on November 20, 2007, Hardwick required her to do two work details but only paid her for only one. (2d Am. Compl. ¶ 72.)

### 6. *Disposal of Plaintiff's Property*

On November 30, 2007, Defendant Watson allegedly violated MDOC Policy Directive 03.03.105 by disposing of Plaintiff's property (including some tapes) without a proper hearing. (2d Am. Compl. ¶¶ 32, 116; 1st Am. Compl. at ECF Pg ID 359.) On December 10, 2007, Acting ARUS Kimberly Masten, who was allegedly Watson's trainee, reviewed Plaintiff's grievance against Watson. Plaintiff says Defendant Masten "contradicted herself" by, on the one hand, stating that Watson had proof that Plaintiff had loaned another inmate her property, but, on the other hand, stating that Plaintiff could not be reimbursed for property because there was no proof that another inmate had her property. (2d Am. Compl. ¶ 36.)

### 7. *Denial of Plaintiff's Bi-Weekly Shop*

On or around December 1, 2007, SCF allegedly reassigned Hardwick to the segregation unit, but, according to Plaintiff, Hardwick left her new position to reject Plaintiff's "biweekly shop" for personal hygiene items. (2d Am. Compl. ¶¶ 34, 35.) Plaintiff says that she was not allowed to order personal hygiene items. (*Id.* ¶ 35.)

### 8. *Plaintiff is Found Guilty of Major Misconduct for Assaulting Inmate Watkins*

On November 26, 2007, inmate Watkins received a cut on her neck as a result of an assault by another inmate. (1st Am. Compl. at ECF Pg ID 335; 2d Am. Compl. ¶ 37.) Watkins was placed into protective custody, and, initially at least, would not divulge who attacked her. (1st Am. Compl. at ECF Pg ID 341; *see also* 2d Am. Compl. ¶ 29.) On December 13, 2007, however, Watkins allegedly went before a Security Classification Committee ("SCC") consisting of Hardwick, DeAngelo, ARUS Eva Lee, and Assistant Deputy Warden Robin Cole, and named Plaintiff as her assailant. (2d Am. Compl. ¶ 37.) That day (or soon thereafter) the incident was reviewed with

7

Plaintiff, and Plaintiff was placed in segregation. (2d Am. Compl. ¶ 38.) Plaintiff alleges that Hardwick, then assigned to the segregation unit, placed Plaintiff in a cell designated for special precaution inmates. (*Id.*; *see also* 2d Am. Compl. ¶ 73.)

On December 20, 2007, Administrative Law Examiner Barbara Bush held a major misconduct hearing, and found Plaintiff guilty of assaulting and battering Watkins. (2d Am. Compl. ¶ 39.) A review of the Major Misconduct Hearing Report reveals that Plaintiff told Defendant Bush that Watkins had falsely accused her of the assault so Watkins would be transferred to WHV (where Moore had been transferred a week before the assault). (1st Am. Compl. at ECF Pg ID 330.) Plaintiff asserts that Bush violated Plaintiff's due process rights by "not allowing camera footage" of the incident and "not getting [the] statements from the staff witnesses [that] [P]laintiff [had] requested." (2d Am. Compl. ¶ 39.) Bush sentenced Plaintiff to 30 days detention beginning December 20, 2007 and to a loss of three credit days. (1st Am. Compl. at ECF Pg ID 330.)[5] Plaintiff appealed the major misconduct charge but the state court affirmed MDOC's decision. (1st Am. Compl. at ECF Pg ID 362.)

### 9. Plaintiff's Cell Condition During Detention

On December 30, 2007, while in detention, Plaintiff says that her "cell was flooded with contaminated toilet water that contained feces and urine [and] these same materials were being thrown around the unit." (2d Am. Compl. ¶ 41.) Plaintiff alleges that, while corrections officers were able to clean up their areas, she was not given proper cleaning supplies. (*Id.*)

---

[5]Plaintiff denies the wrongdoing, however, and notes that during the Michigan State Police's investigation into possible assault charges, she passed a polygraph performed by the police. (2d Am. Compl. ¶¶ 55, 63.)

*10. Plaintiff Files a Failure to Protect Grievance*

On or around January 1, 2008, Plaintiff filed a grievance regarding SCF's failure to protect. (2d Am. Compl. ¶ 42; 1st Am Compl. at ECF Pg ID 377.) The grievance provides that since October 29, 2007, Plaintiff had been informing "staff through the chain of command that inmate Moore . . . and inmate Watkins . . . were talking about setting me up . . . ." (1st Am Compl. at ECF Pg ID 377.) The grievance does not explicitly identify who was responsible for failing to protect Plaintiff but it does provide that she talked with Hardwick, Sanders, and non-party "Deputy Schuhmakur" in an attempt to resolve the issue. (*Id.*)

*11. Plaintiff's Reclassification to Administrative Segregation*

On January 10, 2008, SCC members Hardwick, Sanders, and Cole reclassified Plaintiff to administrative segregation to begin upon completion of Plaintiff's detention on January 16, 2008. (2d Am. Compl. ¶ 44; 1st Am. Compl. at ECF Pg ID 390.)

Plaintiff filed a grievance on January 25, 2008 asserting that, under an MDOC policy directive, the SCC was required to review her security classification on a weekly basis and the SCC failed to review her status on January 17, 2008 (a week from the January 10, 2008 decision). (1st Am. Compl. at ECF Pg ID 390; *see also* 2d Am. Compl. ¶ 47.) The record reflects, however, that the SCC began reviewing Plaintiff's classification on a weekly basis thereafter. On January 24, 2008, Hardwick conducted Plaintiff's SCC interview, and an SCC committee of Cole, Sanders, and Acting ARUS Sarah Stringer-Hill recommended that Plaintiff continue in administrative segregation. (1st Am. Compl. at ECF Pg ID 347.) The next week, on January 31, 2008, Hardwick again interviewed Plaintiff, with an SCC committee of DeAngelo, Lee, and non-party "L. Beasley," recommending continued segregation. (1st Am. Compl. at ECF Pg ID 348.)

Plaintiff alleges that on January 31, 2008, she appealed the SCC's decision to reclassify her to administrative segregation (apparently an appeal of the January 10, 2008 decision). (2d Am. Compl. ¶¶ 48, 49.) According to Plaintiff, DeAngelo stated that Plaintiff needed therapy due to her denial of the assault on Watkins. (2d Am. Compl. ¶ 49.) Plaintiff claims that she was threatened with modified grievance access for appealing the SCC decision. (*Id.*)

On February 7, 2008, Hardwick interviewed Plaintiff with an SCC committee of DeAngelo, Lee, and non-party "Q. Parker" making the decision to continue Plaintiff's segregation. (1st Am. Compl. at ECF Pg ID 349.)

On February 14, 2008, an SCC committee of DeAngelo, Hunter, and, Hardwick (with Hardwick again performing the SCC interview) reclassified Plaintiff to the general population. (1st Am. Compl. at ECF Pg ID 361; *see also* 2d Am. Compl. ¶ 52.) According to Plaintiff, however, she had to wait until Hardwick's off-day to actually return to the general population because Hardwick said that there was no bed space. (2d Am. Compl. ¶ 52.) Plaintiff says that after she was released from segregation, Hardwick came to Plaintiff's new housing unit daily. (2d Am. Compl. ¶ 58.)

Plaintiff alleges that before each SCC review, she wrote to SCF Inspector Sherman Campbell. (2d Am Compl. ¶ 40.) Plaintiff sought to notify Defendant Campbell that she had filed grievances against Hardwick and Sanders, and the two were members of the SCC (along with "[Hardwick's friend Jones]") who would be involved in determining her security status. (1st Am. Compl. at ECF Pg ID 352-54.)

### 12. *Plaintiff's Reports of Staff Conduct to Defendant Stovall*

Plaintiff asserts that on January 17, 2008 she wrote SCF Warden Clarice Stovall a letter "concerning the staff[] and the misconduct [charge]." (2d Am. Compl. ¶ 46.) It appears that

sometime in February 2008, in response to letters Plaintiff wrote to her family (some of which SCF staff allegedly ripped up or failed to send), Plaintiff's family sent Defendant Stovall a "packet" of complaints asserting that Hardwick and ARUS Leslie Hunter had been harassing Plaintiff. (*See* 2d Am. Compl. ¶¶ 53, 75; 1st Am. Compl. at ECF Pg ID 400.) On February 21, 2008, Defendants Hardwick and Hunter allegedly went to Plaintiff's unit with the papers. (2d Am. Compl. ¶ 53; 1st Am. Compl. at ECF Pg ID 400.) Plaintiff says that Hardwick and Hunter "used intimidation" when asking Plaintiff to "hand over a copy of [her] [major misconduct] appeal" which Plaintiff "could not do." (2d Am. Compl. ¶ 53; 1st Am. Compl. at ECF Pg ID 400.)

### 13. *Confiscation of Plaintiff's Legal Work*

On April 15, 2008, Defendants Lee and Resident Unit Manager Ester Ward allegedly confiscated Plaintiff's legal work. (2d Am. Compl. ¶ 59.) A grievance Plaintiff completed on April 25, 2008, states that Lee took Plaintiff's legal work in violation of MDOC Policy Directive 04.07.112 which, among other things, requires a hearing within seven days of confiscating legal materials. (1st Am. Compl. at ECF Pg ID 372; *see also* 2d Am. Compl. ¶ 60.) Stringer-Hill responded to the grievance. (2d Am. Compl. ¶ 117.) Although her response is unclear, it appears that a hearing was set for April 18, 2008, but due to Lee's absence, the legal materials were turned over to a hearing officer with a hearing set for May 21, 2008. (*Id.* at ECF Pg ID 373.) The grievance response further notes that "Prisoner [Dyer] is able to access her legal documents and obtain whatever legal documents she need[s] to work on her case pending hearing date. Prisoner [Dyer's] property is pack[ed] and stored in a secure location pending the hearing date." (*Id.*) Ward reviewed Stringer-Hill's response. (*Id.*)

Plaintiff asserts that on May 8, 2008, she corresponded with Defendants Lee, Ward, and

11

Campbell in an attempt to get access to her legal work for an upcoming visit from her attorney. (2d Am. Compl. ¶ 61.) Plaintiff was allegedly denied access. (*Id.*)

### 14. Problem Cell Mates

Plaintiff claims that in April 2008 Ward placed Plaintiff with "one of the worst inmates." (2d. Am. Compl. ¶ 79.) In June 2007, Ward allegedly placed Plaintiff with a chain smoker. (*Id.* ¶ 80.)

### 15. Plaintiff's Work Detail

Plaintiff alleges that on June 10, 2008, Ward took her laundry work detail away. (2d Am. Compl. ¶ 64.) Allegedly, Ward managed to have Cole change Plaintiff's work hours to conflict with Plaintiff's library hour. (*Id.*) Plaintiff says that the all units except Ward's unit were on the same time schedule. (*Id.*)

### 16. Notice of Decision on Plaintiff's Petition for Habeas

On August 15, 2008, Plaintiff's petition for habeas corpus was denied. *Dyer v. Stovall*, No. 06-cv-14898 (E.D. Mich. Aug. 15, 2008) (Dkt. 28). Plaintiff asserts that someone at SCF failed to provide this decision to her. (2d Am. Compl. ¶ 66.) A year later, Plaintiff attempted to appeal, but the Sixth Circuit dismissed the appeal as untimely.

### 17. Denial of Shower

On October 10, 2008, Defendant Jones allegedly denied Plaintiff a shower. (2d Am. Compl. ¶ 112.)

### 18. Wedding Band

Without specifying which year, Plaintiff alleges that, on "March 5," Masten "refused [P]laintiff's order for a wedding band even though she has been married." (2d Am. Compl. ¶ 122.)

**C. Plaintiff's Additional Allegations and Evidence In Support of Preliminary Relief**

In May 2009 SCF closed. Plaintiff is now a resident at the Women's Huron Valley Correctional Facility ("WHV"). In her Motion for Preliminary Injunction, Plaintiff says that four Defendants are working at WHV. Based on the allegations in Plaintiff's Second Amended Complaint and the affidavits attached to Defendants' Motion for Summary Judgment, the Court has identified the following Defendants as now working at WHV: Jodi DeAngelo as deputy warden, Kimberly Masten as a resident unit supervisor, JaNae Jones as a corrections officer, and Sarah Stringer-Hill as a resident unit supervisor.

Plaintiff seeks injunctive relief against "harassment through cell assignments." (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 991.) In an affidavit offered in support of her Motion for Preliminary Injunction, Plaintiff avers that in 2010 and 2011 her cell at WHV "bec[a]me a transit cell for problem inmates." (Pl.'s Mot. for Prelim. Inj., Dyer Aff. ¶ 11.)

Plaintiff says that on January 15, 2012 she had a "nice clean respectable cell mate" but then another inmate, Simmons, was moved into Plaintiff's cell. (Dyer Aff. ¶ 12.) Plaintiff avers that Simmons had been having problems with her prior cell mate. (*Id.*)

Plaintiff asserts that after Simmons moved out, another inmate, Cole, moved in with Plaintiff. (Dyer Aff. ¶ 14.) According to Plaintiff, Cole was also having problems with her previous cell mate. (*Id.*) Plaintiff also says that Cole "is an assaultive inmate who on April 1, 2012 went to special precaution because she was feeling suicidal." (*Id.*)

Plaintiff says that on April 1, 2012, she was set to get "a good cell mate" but that move was cancelled. (Dyer Aff. ¶ 15.) Instead, says Plaintiff, "a problem youthful offender" McDaniel, moved in with Plaintiff. (*Id.*)

On April 18, 2012, Plaintiff wrote a letter to this Court. (Dkt. 73.) The letter provides that on April 14, 2012 Plaintiff "received yet another problem cell mate." Plaintiff states that this inmate also "was not doing well with previous cell mate." (*Id.*)

In terms of harm, Plaintiff asserts that "there is nothing more challenging than living with sick, mentally ill, hearing impaired, and problem inmates." (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 991.) Plaintiff says that she "has had problems sleeping, anxiety, paranoia, and depression." (*Id.*)

Plaintiff asserts that WHV has a policy which allows, when certain criteria are met, for inmates to select cell mates. (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 1000-02, WHV Operating Procedure 03.03.130.) Plaintiff avers that she has met all these criteria except for one requiring her to reside in the same unit for 30 days; she says that Defendants or WHV staff move her to another unit before she can meet the 30-day requirement. (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 993.) Perhaps in view of this policy, Plaintiff asks the Court to grant the following injunctive relief:

> Plaintiff ask[s] that she is allowed to choose one cell-mate to keep for the duration of her incarceration. The only stipulations would be if the other inmate was discharged from [MDOC], only then would [P]laintiff be allowed to choose another cell-mate. Plaintiff would also not be allowed to have a cell-mate who is in a higher custody level due to different housing needs.

(Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 994.)

## II. ANALYSIS

Plaintiff must carry a heavy burden to demonstrate entitlement to a preliminary injunction. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Layette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *see also Winter v. Natural Res. Def.*

*Council*, 555 U.S. 7, 22 (2008). Further, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland,* 740 F.2d 432, 438, n.3 (6th Cir. 1984).

In determining whether to grant a preliminary injunction, a court considers the following four factors: (1) whether the plaintiff is likely to succeed on the merits, (2) whether the plaintiff is likely to suffer irreparable injury absent an injunction, (3) whether the balance of equities tips in the plaintiff's favor, and (4) whether the public interest would be served by granting the injunction. *See Winter*, 555 U.S. at 20. The four preliminary injunction factors are "'factors to be balanced, not prerequisites that must be met.'" *Michael v. Futhey*, No. 08-3932, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is a likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he demonstration of some irreparable injury is a *sine qua non*[6] for issuance of an injunction."); *see also Winter*, 129 S.Ct. at 375 (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction"). Additionally, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

As an initial matter, the Court questions whether it may grant Plaintiff *preliminary* relief for events occurring two years after this suit was filed and are at best tenuously related to the allegations

---

[6]"Indispensable, absolutely necessary or essential." *Oxford English Dictionary* (2d ed. 1989) *available at* http://www.oed.com/view/Entry/180078?redirectedFrom=sine%20qua%20non.

in the Second Amended Complaint which all involve conduct in 2007 and 2008. As explained by another court:

> A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. It is self-evident that [Plaintiff's] motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of [Plaintiff's] 42 U.S.C. § 1983 lawsuit. To the contrary, [Plaintiff's] motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit. Thus, the district court correctly ruled as a matter of law that [Plaintiff] was not entitled to a preliminary injunction.

*Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (internal citations omitted). Ultimately, however, the Court need not decide this issue because the preliminary injunction factors – primarily the likelihood of success factor – do not favor preliminary relief.

The legal basis for Plaintiff's Motion for Preliminary Injunction is a First Amendment retaliation claim. (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 992.) A First Amendment retaliation claim essentially consists of three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has not shown a likelihood of success on the third element. Plaintiff asserts that

16

"she has been denied her First Amendment right to grieve and file a law suit without harassment." (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 992.)  But after a review of the attachments to Plaintiff's First Amended Complaint, the allegations of the Second Amended Complaint, and Plaintiff's Motion for Preliminary Injunction, the Court finds no grievance filed against three of the Defendants now working at WHV: DeAngelo, Jones, and Stringer-Hill.  Accordingly, Plaintiff has not put forth sufficient evidence that these Defendants are motivated to retaliate against her because she filed grievances against them.  Plaintiff does allege that she grieved Masten in 2009 for sanctioning her and taking her property.  (2d Am. Compl. ¶ 121.)  However, Plaintiff has produced no evidence tying together (1) those grievances, (2) a resulting motivation to retaliate, and, (3) over two years later, the assignment of problem cell mates.  Plaintiff therefore has not shown that she is likely to succeed in showing that Masten assigned her problem cell mates in 2012 in retaliation for exercising her First Amendment rights in 2009.

Remaining is Plaintiff's claim that these four Defendants are retaliating against her because she filed this lawsuit.  This is possible.  But, again, Plaintiff has not shown that it is likely.  Plaintiff has offered no evidence that DeAngelo, Masten, Jones, or Stringer-Hill are assigning her "problem" inmates because of this suit.  And her conclusory allegations to that effect are short of what is required for an injunction.  *See Learly v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("We note that the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion.").

Given that Plaintiff has not shown a likelihood of success on the merits, the Court discusses the other injunction factors only briefly.  *See Gonzales*, 225 F.3d at 625.  Regarding irreparable harm, although Plaintiff asserts mental distress, it is unclear whether the primary cause of her

depression and anxiety are her recent cell mates. In fact, Plaintiff has attached a "Transition Accountability Plan" indicating a "goal" of mental-health counseling as of July 2011. (Pl.'s Mot. for Prelim. Inj. at ECF Pg ID 1020.) This was many months before the recent cell-mate assignments Plaintiff now seeks an injunction against. As to the remaining two factors, whether issuance of the injunction would cause substantial harm to others and whether the public interest would be served by issuance of the injunction, in another prisoner civil rights case involving a request for preliminary injunction, a federal court in this Circuit aptly explained:

> in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).

*Brim v. Galloway*, No. 2:10-cv-64, 2011 U.S. Dist. LEXIS 30072 (W.D. Mich. Jan. 20, 2011). Plaintiff has not made a sufficient showing of a violation of her constitutional rights to justify the Court getting involved with prison cell mate assignments. Accordingly, these preliminary injunction factors do not weigh in favor of injunctive relief. And even if the Court were to find otherwise, they would not weigh so strongly in Plaintiff's favor as to overcome Plaintiff's failure to show a likelihood of success on the merits.

## III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court RECOMMENDS that Plaintiff's Motion for Preliminary Injunction be DENIED.

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: May 7, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 7, 2012.

s/Jane Johnson<br>
Deputy Clerk